Filed 11/26/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>ANDREW BARNEY DAVIDSON,<br><br>  Defendant and Appellant. | 2d Crim. No. B244607<br>(Super. Ct. No. 2012014702)<br>(Ventura County) |

Over 40 years ago and during the infancy of *Miranda v. Arizona* (1966) 384 U.S. 436, 16 L.Ed.2d 694 (*Miranda*), Justice Macklin Fleming articulated the rule which controls the *Miranda* issue in this case: "When circumstances demand immediate investigation by the police, the most useful, most available tool for such investigation is general on-the-scene questioning, designed to bring out the person's explanation or lack of explanation of the circumstances which aroused the suspicion of the police, and enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges." (*People v. Manis* (1969) 268 Cal.App.2d 653, 665.

Andrew Barney Davidson appeals his conviction by jury of unlawful taking a vehicle (Veh. Code, § 10851, subd. (a)) and possessing a methamphetamine pipe (Health & Saf. Code, § 11364.1, subd. (a)). He admitted a prior auto theft conviction. (Pen. Code, § 666.5.) Pursuant to "sentencing realignment," appellant was sentenced to felony jail: two years county jail and two years mandatory supervision. (Pen. Code, § 1170, subd. (h)(5)(A).) Appellant contends that the trial court erred in admitting his pre-arrest statement without prior advisement and waiver of his *Miranda* rights. He also contends

that the trial court erred in admitting other crimes evidence.  (Evid. Code, § 1101, subd. (b).)  We affirm.

*Facts*

During the morning of April 22, 2012, Jesse Hofer reported that his new Suzuki motorcycle was stolen from his driveway.  Hofer last saw the motorcycle at 3:30 a.m. after a house party ended.  Hofer lived in Simi Valley near a riverbed and Ish Street.

At 9:45 a.m., Dennis Tooman saw appellant pushing a motorcycle on Ish Street near the riverbed.  Tooman, who had some knowledge of motorcycles, believed the motorcycle was stolen because wires were hanging out of the ignition.  Appellant told Tooman that he had been riding the motorcycle and that it stopped.   Tooman called 911 and reported what he saw and heard.

At 10:00 a.m., Simi Valley Police Officer Patrick Coulter responded to a call that a white male in baggy pants was pushing a stolen motorcycle down the street.  Officer Coulter saw appellant pushing a new Suzuki motorcycle near Ish Street.  Appellant saw the patrol car, changed direction, and pushed the motorcycle behind a high profile vehicle in order to hide.

Officer Coulter ordered appellant to put the motorcycle down, remove his backpack, and step towards him.  Appellant put a flat-blade screwdriver down on the motorcycle seat.  Officer Coulter was concerned for his safety because the screwdriver could be used as a weapon.  He noticed that jumper wires were hanging out the ignition switch.  He opined that appellant was acting "hanky" and looked like he was ready to flee.

Officer Coulter handcuffed appellant and told him to sit on the sidewalk curb.  He said that he was investigating a possible stolen motorcycle in the area.  He asked one question:  "Is this your vehicle?"  Appellant said that he found the motorcycle in some bushes in a nearby industrial-office area.  This single answer was at variance with a reasonable explanation of why he was in possession of, and pushing an inoperative but new motorcycle with wires hanging out of the ignition switch.

Appellant was arrested and patted down for weapons, A glass smoking pipe was in his front pants pocket. Hofer was contacted by the police and confirmed that appellant had his motorcycle and did not have permission to take it.

At trial appellant defended on the theory consistent with his statement to Officer Coulter that someone else stole the motorcycle, damaged it, and dumped it. He found it and had no knowledge that it had been stolen.

In rebuttal the People introduced evidence that appellant took Debra Schackelford's car in front of her Simi Valley house on August 19, 2010. The Los Angeles Police saw the car on August 23, 2010, after a license plate recognition camera alerted that the car was stolen. Appellant led the police on a car chase and was stopped. The car ignition was punched out, the radio was missing, and a flat-head screwdriver was on the center console.

*Custodial Interrogation Vel Non*

Appellant contends that his pre-arrest statement was inadmissible because he was not advised of his *Miranda* rights. The trial court found that handcuffing appellant and asking "Is this your vehicle?" was not a custodial interrogation: "[T]he officer indicated that he was investigating. The question[] was almost immediately out of his mouth after the handcuffs went on. There is no way this is custody for purposes of *Miranda*. The statement is admissible."

On appeal, we defer to the trial court's factual findings supported by substantial evidence and independently determine from the factual findings whether appellant was in custody for *Miranda* purposes. (*People v. Leonard* (2007) 40 Cal.4th 1370, 1400.) It is settled that *Miranda* advisements are required only when a person is subjected to "custodial interrogation." (*Miranda, supra,* 384 U.S. at p. 444 [16 L.Ed.2d at p. 706]; *People v. Mickey* (1991) 54 Cal.3d 612, 648.) The *Miranda* opinion itself permits "general on-the-scene questioning as to facts surrounding a crime. . . ." (*Id.* at pp. 725-726.) A custodial interrogation does not occur where an officer detains a suspect for investigation and the questioning is limited to the purpose of identifying a suspect or ". . . to obtain sufficient information confirming or dispelling the officer's suspicions. (Citations.) . . ."

(*People v. Farnam* (2002) 28 Cal.4th 107, 180; see also *Berkemer v. McCarty* (1984) 468 U.S. 420, 439 [82 L.Ed.2d 317,334])  [answers to investigatory questions by police officer who lawfully detains a person pursuant to a traffic stop are admissible even if the person was not given *Miranda* warnings].

Justice Fleming eloquently explained the common sense premise to the rule allowing "brief and casual" questioning during a temporary detention.  "The purpose of temporary detention is to enable the police to determine, with minimum upset to public tranquility and minimum intrusion into personal rights, whether they should arrest a suspect and charge him with crime, whether they should investigate further, or whether they should take no action because their initial suspicion proved groundless. What tools do we allow the police to use in making a decision which often calls for the employment of nice discrimination? Obviously, the police can use their sense of sight, hearing, and smell and thereby obtain a certain amount of information from the person's dress, appearance, physical condition, and demeanor. But where, as here, the circumstances which have induced the temporary detention suggest that stolen property is about to be pawned, the keenest personal observation is apt to prove uninformative and unenlightening. In this, as in many investigations, progress toward a rational decision about what to do next can only be made by asking questions. The information needed by the police to make an intelligent decision on street detention is ordinarily obtainable only from the suspect's answers. 'Despite modern advances in the technology of crime detection, offenses frequently occur about which things cannot be made to speak. And where there cannot be found innocent human witnesses to such offenses, nothing remains-if police investigation is not to be balked before it has fairly begun-but to seek out possibly guilty witnesses and ask them questions, witnesses, that is, who are suspected of knowing something about the offense precisely because they are suspected of implication in it.' ( *Culombe v. Connecticut,* 367 U.S. 568, 571 [6 L.Ed.2d 1037, 1040, 81 S.Ct. 1860].)

"Do we then allow the police to ask questions of persons suspected of crime who have been temporarily detained for investigation? In California the answer is yes, an answer initially formulated as the privilege of the police to seek out and question suspects and those

believed to have knowledge of crime, but which has been subsequently broadened to include brief questioning of persons who have been involuntarily detained. (*People v. Mickelson,* 59 Cal.2d 448, 450-452 [30 Cal.Rptr. 18, 380 P.2d 658]; *People v. Martin,* 46 Cal.2d 106, 108 [293 P.2d 52]; *People v. Blodgett,* 46 Cal.2d 114, 117 [293 P.2d 57]; *People v. Michael,* 45 Cal.2d 751, 754 [290 P.2d 852]; *People v. Machel,* 234 Cal.App.2d 37, 46 [44 Cal.Rptr. 126]; *People v. Cowman,* 223 Cal.App.2d 109 [35 Cal.Rptr. 528]; *People v. Beverly,* 200 Cal.App.2d 119, 125 [19 Cal.Rptr. 67]; *People v. King,* 175 Cal.App.2d 386, 390 [346 P.2d 235]; *People v. Jackso*n, 164 Cal.App.2d 759 [331 P.2d 63].)" (*Id,* at pp. 661-662.)

Whether a person is in custody is an objective test: the pertinent inquiry is whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. (*People v. Leonard*, *supra,* 40 Cal.4th at p. 1400.) The totality of the circumstances are considered and include "(1) whether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention: (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning." (*People v. Forster* (1994) 29 Cal.App.4th 1746, 1753.) Additional factors are whether the officer informed the person he or she was considered a witness or suspect, whether there were restrictions on the suspect's freedom of movement, whether the police were aggressive, confrontational, and/or accusatory, and whether the police used interrogation techniques to pressure the suspect. (*People v. Aguilera* (1996) 51 Cal.App.4th 1151, 1162.)

Officer Coulter responded to a call that a man matching appellant's description was pushing a stolen motorcycle. He saw appellant push a new motorcycle down the street and try to hide behind a vehicle. Appellant had a flat-blade screwdriver that could be used as a weapon, was acting "hanky," and was handcuffed for officer safety purposes. Officer Coulter advised appellant that he was being detained while the police investigated a possible motorcycle theft, and asked: "Is this your vehicle?" This single question was asked to confirm or dispel the officer's suspicions. A peace officer harboring the suspicion that a motor vehicle is perhaps stolen may inquire as to ownership. In these circumstances the

5

California Vehicle Code expressly allows an officer to ask for the registration of a vehicle. (Veh. Code § 2804, *People v, Cacioppo* (1968) 264 Cal.App.2d 392, 396-397.)

Appellant claims that handcuffing and asking him a question rendered it a custodial interrogation. But the court must consider all the circumstances surrounding the police encounter and no one factor is controlling. (*People v. Pilster, supra,* 138 Cal.App.4th at p. 1404.) Handcuffing a suspect during an investigative detention does not automatically make it custodial interrogation for purposes of *Miranda. (Ibid.*; *United States v. Bautista* (9th Cir. 1982) 684 F.2d 1286, 1289.) Here it is obvious that the reason for the handcuffing was appellant's possessing a flat-blade screwdriver and the officer's belief that appellant was about to flee.

Appellant was advised that he "was being detained while we investigate[] this." The detention lasted two minutes. Officer Coulter was alone, and appellant was questioned on a public sidewalk. "This is a significant difference from interrogation at the police station, 'which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek.' [Citation.]" (*People v. Pilster, supra,* 138 Cal.App.4th at p. 1404; see *Orozco v. Texas* (1969) 394 U.S. 324, 326-327 [22 L.Ed.2d 311, 314-315] [place of interrogation is not determinative but is a factor to consider].) Based on the totality of the circumstances the trial court reasonably concluded that it was not a custodial interrogation for *Miranda* purposes. (*People v. Clair* (1992) 2 Cal.4th 629, 679-680; *People v. Pilster, supra,* 138 Cal.App.4th at p. 1404.)

There are, of course, limits to the rule allowing "brief and casual" investigatory questions. If the questioning is aggressive, confrontational, accusatory, coercive, or sustained, the court may find a violation of *Mianda*. As Justice Fleming said, *Miranda* warnings are not required "until such time as the point of arrest or accusation has been reached or the questioning has ceased to be brief and casual and became sustained and coercive." (*People v. Manis, supra,* 268 Cal.App.2d at p. 669.)

*Other Crime Evidence*

Appellant argues that the trial court abused its discretion in admitting evidence of the prior car theft to show knowledge, intent, and common plan. (Evid. Code, § 1101, subd. (b).) Appellant claimed that he innocently found the motorcycle, requiring the prosecution to show that appellant had the specific intent to permanently or temporarily deprive the owner of title or possession. (*People v. O'Dell, supra,* 153 Cal.App.4th at p. 1574.) The prior car theft was sufficiently similar to show knowledge, intent, and common plan. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402-403.) Appellant took the car during the early morning hours when it was parked in front of the victim's house. The car ignition was punched out with a flat-blade screwdriver and appellant was stopped after a license plate recognition camera alerted that the car was stolen.

Appellant argues that the other crimes evidence was more prejudicial than probative (Evid. Code, § 352) and the jury could have treated it as propensity evidence. The jury was instructed that the other crimes evidence could only be considered to show knowledge, intent, or common plan. (CALCRIM 375.) It was instructed not to consider the evidence for any other purpose, that it was not to conclude that appellant had a bad character propensity to commit the crime, and that the other crimes evidence "is not sufficient by itself to prove that the defendant is guilty . . . ." (CALCRIM 375.) It is presumed tht the jury understood and followed the instruction. (*People v. McDermott* (2002) 28 Cal.4th 946, 999.)

The judgment is affirmed.

CERTIFIED FOR PUBLICATION


                                                              YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

7

David M. Hirsch, Judge

Superior Court County of Ventura

_____

Patricia A. Malone, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Zee Rodriguez, Deputy Attorney General, for Plaintiff and Respondent.