Filed 11/3/14  P. v. Lopez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C072951 |
| v. | (Super. Ct. No. CRF123421) |
| STEVEN JOHN LOPEZ III, | |
| Defendant and Appellant. | |

Defendant Steven John Lopez III was convicted by jury of unlawful taking or driving of a vehicle (Veh. Code, § 10851, subd. (a)), possession of burglary tools (Pen. Code, § 466), and driving with a suspended license (Veh. Code, § 14601.1, subd. (a)).  In a bifurcated proceeding, the trial court found true allegations defendant was convicted of unlawful taking or driving of a vehicle on two prior occasions (Pen. Code, § 666.5, subd. (a)) and he had served three prior prison terms (Pen. Code, § 667.5, subd. (b)).  The trial court sentenced defendant to serve an aggregate term of six years in the county jail under Penal Code section 1170, subdivision (h), with execution of the concluding two years

1

suspended, during which defendant shall be subject to mandatory supervision, and imposed other orders.

Defendant raises one contention on appeal. He claims the trial court prejudicially erred and violated his constitutional rights by admitting evidence he was previously convicted of unlawful taking or driving of a vehicle, offered by the prosecution to prove his intent to permanently or temporarily deprive the vehicle's owner of title or possession and to negate defendant's statement to police that he believed the car belonged to his girlfriend. We conclude the challenged evidence was admissible under Evidence Code section 1101, subdivision (b).[1] Nor did the trial court abuse its discretion in concluding, under section 352, the probative value of the evidence was not substantially outweighed by the danger of undue prejudice. In light of these conclusions, we also conclude defendant's federal constitutional rights were not violated by admission of the challenged evidence. Accordingly, we affirm the judgment.

FACTS

*Present Offense*

On August 27, 2012, Genrikh Fekho's Toyota Camry was stolen while parked in front of his apartment complex on Maple Street in West Sacramento. The following morning, Officer Daniel Gill of the West Sacramento Police Department was on patrol when he spotted a Camry matching the description of the stolen car traveling eastbound on Sacramento Avenue, close to where Fekho's car was taken. The Camry, driven by defendant, turned onto Todhunter Avenue and continued northbound at a high rate of speed. Officer Gill followed in pursuit and initiated a traffic stop while radioing the license plate number to dispatch. The license plate belonged on a Camry registered to Leonard Seifried.

---

[1]     Undesignated statutory references are to the Evidence Code.

2

Defendant pulled over. Officer Gill approached the car, informed defendant he was being pulled over for speeding, and asked for his driver's license. As defendant pulled an identification card out of his right pants pocket, two white latex gloves also came out of the pocket. Noticing there was a single key in the ignition and the center console appeared to be damaged, Officer Gill asked: "Whose car is this?" Defendant said it belonged to his girlfriend, Evette. Officer Gill then radioed the information from defendant's identification card to dispatch, learned his driver's license was suspended, and informed defendant he was under arrest for driving with a suspended license. Officer Gill also asked dispatch for the last four numbers of the vehicle identification number (VIN) associated with the license plate and checked that against the VIN on the car. The numbers did not match. Officer Gill then ran the VIN through dispatch, discovered the Camry was indeed the car stolen from Fekho, and informed defendant he was also under arrest for driving a stolen vehicle.

Officer Gill searched the Camry incident to defendant's arrest. The two latex gloves that had fallen out of defendant's pocket were in the center console. The key in the ignition was "shaved," as were four or five keys that were found on a key ring on the left side of the driver's seat, between the door frame and the floorboard. A backpack belonging to defendant was found in the back seat. Officer Gill also contacted Fekho, who came to the scene of the traffic stop and identified his vehicle. The shaved keys did not belong to him. Nor did the license plate that was on the car. Fekho testified he never gave defendant permission to drive his car.

Defendant's sister, Andrea Hernandez, testified for the defense. She testified defendant and his friend, Jonie, were at her apartment on Maple Street the night before defendant was arrested. According to Hernandez, defendant and Jonie left sometime after 11:00 p.m. Defendant asked to borrow Hernandez's car, but she declined. Then, Jonie took a key off of a key ring and handed it to defendant. Hernandez assumed this was a key to Jonie's car. After defendant's arrest, Hernandez wrote a letter to defense

3

counsel stating she had filled a backpack with clothes defendant left at her apartment. The backpack was one she previously used while taking a medical assistant class and she inadvertently left some medical gloves in the backpack. Defendant grabbed this backpack before leaving her apartment. On cross-examination, Hernandez testified she did not see defendant leave with the backpack that night. She also testified the backpack recovered from the back of the stolen Camry was not the backpack she packed for defendant.

### *Prior Conviction*

The prosecution also introduced evidence relating to one of defendant's prior convictions for unlawful taking or driving of a vehicle. Defendant committed the prior offense in July 1999. While on patrol in an unmarked vehicle, Officer Matt Luiz of the West Sacramento Police Department received a dispatch regarding an Oldsmobile that was recently stolen from a nearby address. As Officer Luiz approached the location, a car matching the description of the stolen vehicle accelerated rapidly past him on Jefferson Boulevard. Officer Luiz radioed the license plate number to dispatch and followed in pursuit as the car drove at a high rate of speed through a residential neighborhood. About the time the plate identification came back as stolen, additional units in marked patrol cars took the lead in the pursuit and activated their lights and sirens. The stolen Oldsmobile, driven by defendant, did not pull over until smoke began billowing out of the windows. Defendant and two occupants quickly emerged from the smoking car and were taken into custody. Defendant told Officer Luiz the car belonged to a friend, Anthony, whom he had just dropped off at a nearby shopping center. When Officer Luiz told defendant he had been following the Oldsmobile in an unmarked patrol car and did not see him stop at the shopping center, defendant admitted he was "lying about that," but said, "everything else was the truth." Rather than drop his friend off at the shopping center, defendant claimed Anthony "took off with somebody else in another vehicle" after handing his car over to defendant.

4

DISCUSSION

Defendant contends the trial court prejudicially erred and violated his federal constitutional rights by admitting evidence he was previously convicted of unlawful taking or driving of a vehicle, which was offered by the prosecution to prove defendant's intent to permanently or temporarily deprive the vehicle's owner of title or possession and to negate his statement to police that he believed the car belonged to his girlfriend. We disagree.

## A.

### *Additional Background*

The prosecution moved in limine to introduce evidence of three prior convictions under section 1101, subdivision (b), specifically, 1999 and 2006 convictions for unlawful taking or driving of a vehicle and a 2005 burglary conviction arising from an attempted vehicle theft.[2]  The prosecution argued:  "Defendant's prior acts of vehicle theft and attempted vehicle theft are relevant to show [he] acted with similar intent when he took [Fekho's] vehicle using shaved keys on August 28, 2012.  Defendant's prior acts bear a substantial similarity to the offenses currently before this Court."  The prosecution also argued:  "Defendant's prior acts are relevant to show that [he] did not find himself in a stolen car by accident.  He has a history of helping himself to other people's cars and the instant case is no different despite his attempt to shift the blame to his girlfriend, 'Evette.' "  Defendant moved in limine to exclude evidence of his prior convictions, arguing such evidence amounted to inadmissible character evidence and its admission would be more prejudicial than probative.

The prosecution provided the following offer of proof with respect to the 1999 conviction:  "On July 19, 1999 at approximately 11:00 p.m., Defendant entered a locked

---

[2]     The trial court did not admit evidence of the 2005 or 2006 convictions.  Therefore, we discuss only the 1999 conviction.

5

vehicle at 417 West Acres Road in West Sacramento and drove away.  The owner of the vehicle, Barbara Austin, heard her car start up and saw that it was driven away from her window.  [Austin] notified West Sacramento Police Department of the theft and the description of the vehicle went out to all West Sacramento police officers.  At approximately 11:07 p.m. officers observed a vehicle matching that description driving at a high rate of speed and attempted to initiate an enforcement stop.  Defendant did not stop and eventually entered the on ramp for eastbound Interstate 80.  Smoke began coming from the vehicle and the vehicle began to slow.  Defendant then took the exit for southbound Interstate 5 and then pulled over.  All of the occupants were arrested and by the time Sacramento Fire responded to the scene, the car was completely engulfed in flames."  The prosecution also noted defendant provided a statement to police after being advised of his *Miranda*[3] rights:  "[D]efendant stated that he was walking with two friends in the area of Michigan Street and Walnut Street in West Sacramento when he got a call from a third friend named Anthony whose last name, address, and phone number were unknown.  Defendant called Anthony back from an unknown location and told him he needed a ride.  Anthony showed up in the car and Defendant got into the driver's seat.  He dropped Anthony off at [a shopping center] parking lot (which the officer noted that the whole time he was following the Defendant he never stopped at that parking lot).  Defendant stated he ran from the police because he did not have a driver's license.  After being confronted with not stopping at the parking lot, Defendant stated that he lied about that and was telling the truth about the rest.  When he was picked up[,] Anthony got into another car and took off.  The keys to the ignition were in the car when they finally stopped.  However, when the officer looked at the photographs of the car after the fire was extinguished there were no keys noted in the ignition."

---

**3**      *Miranda v. Arizona* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

6

The trial court ruled the prosecution could introduce evidence of the 1999 conviction, but not the 2005 or 2006 convictions. The trial court explained: "The case law which references this use of prior . . . misconduct points out that this does not have to be in substantial similarity between prior offenses and the charged offense, but clearly we're dealing with [section] 352 issues, and the relevance of the evidence of prior instances of misconduct. [¶] I would permit the prosecution to use evidence of the 1999 auto theft inciden[t] because according to the prosecution when the defendant was stopped driving a stolen motor vehicle, he had an explanation that someone he knew had given him the vehicle and he later admitted to the police officer that he was lying about some of the information that he gave concerning this other person. [¶] I would also note that was the vehicle that was actually stolen in West Sacramento as was the vehicle in this case, so I would find there is similarity between the facts of this case and that 1999 case."

## B.

### *Analysis*

With certain exceptions, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (§ 1101, subd. (a).) One such exception is found in subdivision (b) of this section, which provides: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as . . . intent, . . . knowledge, . . . absence of mistake or accident, . . .) other than his or her disposition to commit such an act." (*Id*., subd. (b).) We review the trial court's admission of other crimes evidence for abuse of discretion. (*People v. Lindberg* (2008) 45 Cal.4th 1, 25.)

Vehicle Code section 10851, subdivision (a), provides in relevant part: "Any person who drives or takes a vehicle not his or her own, without the consent of the owner

7

thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title or possession of the vehicle, whether with or without intent to steal the vehicle, . . . is guilty of a public offense . . . ." This crime has four elements. The prosecution must prove (1) "the defendant drove or took a vehicle," (2) "belonging to another person," (3) "without the owner's consent," and (4) "the defendant had the specific intent to permanently or temporarily deprive the owner of title or possession." (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1574.)

At trial, the defense conceded the first three elements. Indeed, defense counsel specifically stated to the jury during closing argument: "The defendant took or drove someone else's vehicle without the owner's consent. We know that this car was owned by somebody else. We know that." The only issue in the case was whether defendant possessed the specific intent to permanently or temporarily deprive the owner of title or possession. As defense counsel stated in closing, "that's the issue." Defendant told police the car belonged to his girlfriend. We know that was not true. The car belonged to Fekho. However, if the jury believed defendant drove the car under the mistaken belief that it belonged to his girlfriend, who gave him permission to drive it, then he would have had no intent to permanently or temporarily deprive Fekho of title or possession of his car. Thus, in order to prove beyond a reasonable doubt that defendant possessed the requisite intent, the prosecution had to counter defendant's claim that he believed the car belonged to his girlfriend. It did so, in part, by introducing evidence of defendant's 1999 conviction for unlawful taking or driving of a vehicle, in which he also claimed the car belonged to someone he knew. Accordingly, this prior conviction went directly to the only contested issue in the case, defendant's intent when he drove the car.

"The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. [Citation.] '[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish

8

(provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . .' [Citation.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." [Citations.]' [Citation.]" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) Here, in both the charged offense and the prior conviction, defendant was discovered driving a stolen car at a high rate of speed in West Sacramento and told the arresting officer the car belonged to someone he knew. In neither instance was the car started with the owner's key. We conclude the prior car theft was sufficiently similar to the present offense to support the inference defendant probably harbored the same intent in each instance, i.e., the specific intent to permanently or temporarily deprive the owner of title or possession. (*People v. Davidson* (2013) 221 Cal.App.4th 966, 973 [in a case of motorcycle theft, evidence of a prior car theft admissible to show knowledge, intent, and common plan].)

Nevertheless, defendant argues, "there was no genuine issue of . . . intent" in this case because "[i]f the jury accepted the prosecution's argument that [he] was lying when he said that his girlfriend had loaned him the car in question, th[e]n 'his intent in [taking the car] could not reasonably be disputed.' " The flaw in this argument is evident from the very statement of it. It presupposes that which the prosecution was required to prove. Of course, if there was no issue as to whether defendant intended to permanently or temporarily deprive Fekho of title or possession of his car, then evidence of the prior car theft would not be admissible for this purpose. However, as we have already explained, the defense conceded defendant was found driving a car that belonged to Fekho, who did not give defendant permission to drive the vehicle. The *only* issue in this case was defendant's intent.

At oral argument, defendant's argument shifted to even less solid ground. There, counsel attempted to transform the case into a whodunit, arguing there was no genuine issue in the case as to whether the person who *took* Fekho's car had the intent to deprive

9

him of title or possession. The only issue, argued counsel, was whether defendant was the person who took the car. However, as pointed out to counsel during oral argument, defendant was not charged with grand theft auto (Pen. Code, § 487, subd. (d)(1)), but was instead charged with violating Vehicle Code section 10851, subdivision (a), which encompasses the unlawful taking *or driving* of a vehicle.[4] There was no dispute at trial as to whether defendant drove the car. Defense counsel conceded as much. This alone suffices to establish the first element of the crime of unlawful taking *or driving* of a vehicle. (*People v. Frye*, *supra*, 28 Cal.App.4th at p. 1086.) Nor was there any dispute as to whether the car belonged to Fekho or whether defendant drove the car without Fekho's consent. These issues were also conceded. The only contested issue was defendant's intent while driving the car. Evidence of defendant's 1999 conviction was relevant and admissible under section 1101, subdivision (b), for this purpose.

Our conclusion the challenged evidence was admissible under section 1101, subdivision (b), does not end our inquiry. "Even if evidence of other crimes is relevant under a theory of admissibility that does not rely on proving disposition, it can be highly prejudicial. 'Regardless of its probative value, evidence of other crimes always involves

---

[4]     When asked at oral argument whether a person can be convicted of violating Vehicle Code section 10851 based on driving a stolen vehicle, even if he or she did not also take the vehicle from the owner, defense counsel answered that driving a stolen vehicle is punishable only under Penal Code section 496, prohibiting the receipt of stolen property. Not so. (*People v. Frye* (1994) 28 Cal.App.4th 1080, 1086 ["no question that Vehicle Code section 10851 can be violated simply by the act of *driving* a car without the owner's consent; the defendant need not have committed the original act of taking the car from the owner"].) The Deputy Attorney General who delivered the People's oral argument also stated Vehicle Code section 10851 requires "a taking" of the vehicle, and further stated the intent required is "to permanently deprive the owner of the vehicle." The statutory language is clear. "Any person who *drives or takes* a vehicle not his or her own, without the consent of the owner thereof, and with intent either to *permanently or temporarily* deprive the owner thereof of his or her title or possession of the vehicle, whether with or without intent to steal the vehicle, . . . is guilty of a public offense . . . ." (Veh. Code, § 10851, subd. (a), italics added.)

10

the risk of serious prejudice. . . .' [Citation.]  Therefore, the law places other restrictions on its admissibility."  (*People v. Thompson* (1980) 27 Cal.3d 303, 318.)  Relevant here, section 352 provides for the exclusion of otherwise admissible evidence if its probative value is "substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  "Since 'substantial prejudicial effect [is] inherent in [other crimes] evidence,' uncharged offenses are admissible only if they have substantial probative value."  (*Ibid*.)

There was no abuse of discretion.  The evidence had substantial probative value with respect to whether defendant intended to permanently or temporarily deprive Fekho of title or possession of his car.  The prosecution presented the evidence through the brief testimony of a single witness.  The trial court did not allow the prosecution to present evidence of two additional convictions, which were also related to car theft, because these convictions were less similar to the present offense, and therefore less probative of defendant's intent than the 1999 conviction.  Finally, the trial court instructed the jury to consider the evidence of this prior conviction for the "limited purpose" of deciding whether or not (1) "defendant acted with the intent to deprive [the] owner of possession or ownership of the vehicle for any period of time," or (2) "defendant's alleged actions were not the result of mistake or accident."  The trial court further instructed the jury: "Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime."  These instructions "eliminated any danger 'of confusing the issues, or of misleading the jury.'  [Citation.]  We presume the jury followed these instructions. [Citation.]"  (*People v. Lindberg*, *supra*, 45 Cal.4th at pp. 25-26 [no abuse of discretion where evidence had substantial probative value, prosecution kept its presentation brief so it would be neither cumulative nor excessive, and trial court provided limiting instruction]; see also *People v. Davidson*, *supra*, 221 Cal.App.4th at p. 973.)

We further reject defendant's contention the admission of the 1999 conviction violated his federal constitutional right to a fair trial.  Our Supreme Court has "long

11

observed that '[a]pplication of the ordinary rules of evidence generally does not impermissibly infringe on a . . . defendant's constitutional rights.' [Citation.] Defendant fails to persuade us his case presents an exception to this general rule." (*People v. Lindberg*, *supra*, 45 Cal.4th at p. 26.)

DISPOSITION

The judgment is affirmed.


      HOCH     , J.


We concur:


     RAYE    , P. J.


  NICHOLSON  , J.