Filed 4/2/15  P. v. Albarran CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FERNANDO MARRON ALBARRAN,<br><br>    Defendant and Appellant. | B256275<br><br>(Los Angeles County<br> Super. Ct. No. KA102993) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Douglas Sortino, Judge.  Affirmed.

Law Office of Eduardo Paredes and Eduardo Paredes for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters Assistant Attorney General, Chung L. Mar and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

Fernando Marron Albarran appeals from the judgment entered following his no contest plea to one count of continuous sexual abuse of a child (Pen. Code, § 288.5, subd. (a))[1] and one count of oral copulation of a person under 14 (§ 288a, subd. (c)(1)).  He challenges the trial court's denial of his motion to suppress statements he made to police, on the basis that they stemmed from an illegal search and seizure and were taken in violation of his *Miranda* rights.  (*Miranda v. Arizona* (1966) 384 U.S. 436.)  We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On August 28, 2013, City of El Monte Police Officer Jonathan Edwards responded to a call regarding a sexual assault on a child.  When Officer Edwards arrived at the home, the victim's aunt said that appellant, the victim's stepfather, had confessed to the family.  Destiny, the victim, was 17 years old at the time.  She told Officer Edwards that appellant had engaged in numerous acts of sodomy and oral copulation with her from the time she was in fourth grade until May 2013.

While Officer Edwards was interviewing Destiny, appellant walked into the house.  Officer Edwards confirmed appellant's identity, and his partner, Officer Pedro Yanez, conducted a pat-down search of appellant.  The officers did not restrain appellant or tell him he was not free to leave.  Officer Yanez asked appellant to sit in the living room where he would not have a direct view of Destiny while Officer Edwards interviewed her.

---

[1]    All further statutory references are to the Penal Code.

[2]    The facts of the underlying offense are not relevant to the issue raised on appeal and therefore are not set forth in detail.  Instead, we set forth the evidence presented at the hearing on appellant's motion to suppress.

2

Officer Edwards did not tell appellant he was under arrest or advise him of his right to counsel because he had not decided to arrest appellant. Instead, he told appellant they were discussing an issue regarding sexual abuse of Destiny. Officer Yanez asked appellant if he was willing to go to the police station and speak to detectives. Appellant was very cooperative and said he wanted to give a statement regarding the allegations.

Appellant wanted to take a shower before going to the police station. Officer Edwards testified that this was an unusual request, but appellant was cooperative, so they decided to allow it. Officer Yanez searched the bathroom for weapons and told appellant he would leave the door open and stand outside the door while appellant showered.

After appellant showered, Destiny and her family got in their own car to drive to the police station. Officer Yanez asked appellant if he was willing to ride in the police car, and appellant said yes. The officers explained to appellant that they were required to handcuff him during transport, but that the handcuffs would be removed when they arrived at the police station. The officers did not hold appellant's arm or restrain him in any way while they walked from the house to the car. Before getting in the police car, appellant turned around and placed his hands behind his back for the handcuffs, and Officer Yanez handcuffed him.

When they arrived at the police station parking lot, Officer Yanez removed the handcuffs and told appellant to go to the lobby and wait for the detective to speak to him. Officer Edwards directed appellant to the lobby, which was a public waiting area, and appellant walked to the lobby. The officers did not remain with appellant or arrange for any officer to watch appellant to ensure he remained in the lobby. Appellant waited in the lobby approximately two hours before being

3

interviewed.  There were no officers waiting with him, and nothing was done to prevent him from leaving.

Detective Jake Fisher interviewed Destiny for about 45 minutes while appellant waited in the lobby.  Destiny told Detective Fisher that she was molested and sodomized by appellant numerous times starting from when she was nine years old.

After interviewing Destiny, Detective Fisher interviewed appellant. Detective Fisher asked Detective Nafarette, who spoke Spanish, to participate in appellant's interview in case translation was needed.  Appellant was not restrained by handcuffs or in any other way during the interview, and he was cooperative throughout.  Appellant was advised of his *Miranda* rights.  During the interview, appellant confessed to numerous acts of sexual abuse of Destiny from the time she was nine years old.  Appellant was placed under arrest at the end of the interview.

Appellant was charged in an amended information with seven counts of sodomy of a person under 14 and more than 10 years younger (§ 286, subd. (c)(1)), one count of continuous sexual abuse of a child (§ 288.5, subd. (a)), and one count of oral copulation of a person under 14 (§ 288a, subd. (c)(1)).  Appellant filed a motion to suppress the statements he made at the police station, asserting that they were obtained in violation of his Fourth Amendment rights and his *Miranda* rights. Appellant contended that he was arrested when he first walked into his home and thus should have been advised of his *Miranda* rights at that time.  He further contended that the detectives advised him of his *Miranda* rights but did not ask if he waived those rights.

After conducting a hearing, the trial court denied the motion to suppress. The court found that appellant was not in custody until the end of the interview with Detectives Fisher and Nafarette.  The court cited the testimony that appellant

4

was never handcuffed in the house and was handcuffed only during transport to the police station and then released from the handcuffs as soon as they reached the police station parking lot. The court further pointed out that appellant waited in the lobby of the police station for two hours with no supervision and was unrestrained in the interview room.

Regarding the *Miranda* waiver, the court found that appellant was properly advised and indicated that he understood his rights. By continuing to speak to the detectives after being advised, appellant impliedly waived his *Miranda* rights.

Appellant agreed to plead no contest to one count of continuous sexual abuse of a child and one count of oral copulation of a child less than 14. Pursuant to the plea agreement, the court sentenced appellant to a total term of 18 years in state prison and dismissed the remaining counts. Appellant filed a notice of appeal, challenging the denial of the motion to suppress.

## DISCUSSION

I.  *Appellant Was Not Placed In Custody At His Home*

Appellant contends that the trial court erred in denying his motion to suppress because he was in custody from the moment he was approached by the officers in his home and thus should have been advised of his *Miranda* rights at that time. We disagree. Based on the evidence presented at the suppression hearing, we conclude that the trial court properly found that appellant was not in custody until the end of his interview with Detectives Fisher and Nafarette.

"On appeal, we defer to the trial court's factual findings supported by substantial evidence and independently determine from the factual findings whether appellant was in custody for *Miranda* purposes. [Citation.] It is settled

5

that *Miranda* advisements are required only when a person is subjected to 'custodial interrogation.' [Citations.] . . .

"Whether a person is in custody is an objective test: the pertinent inquiry is whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. [Citation.] The totality of the circumstances is considered and includes '(1) whether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning.' [Citation.] Additional factors are whether the officer informed the person he or she was considered a witness or suspect, whether there were restrictions on the suspect's freedom of movement, whether the police were aggressive, confrontational, and/or accusatory, and whether the police used interrogation techniques to pressure the suspect. [Citation.]" (*People v. Davidson* (2013) 221 Cal.App.4th 966, 970-972.)

We agree with the trial court that the totality of the circumstances indicates that appellant was not in custody at his house or at the police station before he was interviewed. When appellant first arrived at the house, Officer Yanez asked if there were any weapons in the house or if he had any weapons on him. Officer Yanez asked permission to pat appellant down, and appellant complied. Officer Yanez did this because he was concerned about officer safety, and he never touched appellant again after the pat-down.

While in the house, the officers did not restrain appellant or place him in handcuffs. They never told him he was under arrest or not free to leave, and appellant never said he wanted to leave. They never raised their voices, became physically aggressive, or drew their weapons. They told him they were

6

investigating the sexual abuse allegations and asked if he was willing to go speak to detectives at the police station.

Appellant argues that Officer Yanez's standing guard while he showered indicates that he was in custody, but this is not true. Officer Yanez's search of the bathroom for weapons and his position outside the door was sensible conduct to ensure the safety of the officers and others in the home and did not indicate that appellant was in custody.

Although appellant was handcuffed during transport to the police station, this was per department policy, and the officers handcuffed him only for the short, five to seven minute ride. They removed the handcuffs as soon as they arrived in the parking lot before they even entered the police station, and they allowed appellant to walk unaccompanied to the police station lobby. The officers did not remain with appellant or ask any other officer to watch appellant during his two-hour wait for his interview. The evidence overwhelmingly supports the trial court's conclusion that appellant was not placed in custody at his home or at the police station prior to his interview by the detectives.

II.      *Appellant Waived His Miranda Rights*

Appellant contends that his *Miranda* rights were violated because Detective Fisher failed to ask appellant explicitly if he waived his rights. We agree with the trial court that appellant waived his rights by continuing to speak with the detectives after being advised of his *Miranda* rights.

"'[A] suspect who desires to waive his *Miranda* rights and submit to interrogation by law enforcement authorities need not do so with any particular words or phrases. A valid waiver need not be of predetermined form, but instead must reflect that the suspect in fact knowingly and voluntarily waived the rights

7

delineated in the *Miranda* decision. [Citation.] . . . [A] valid waiver of *Miranda* rights may be express or implied. [Citations.] A suspect's expressed willingness to answer questions after acknowledging an understanding of his or her *Miranda* rights has itself been held sufficient to constitute an implied waiver of such rights. [Citations.] . . .

"Ultimately, the question becomes whether the *Miranda* waiver is shown by a preponderance of the evidence to be voluntary, knowing and intelligent under the totality of the circumstances surrounding the interrogation. [Citations.] The waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception' [citation], and knowing in the sense that it was 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' [Citation.]" (*People v. Sauceda-Contreras* (2012) 55 Cal.4th 203, 218-219 (*Sauceda-Contreras*).)

"In considering a claim on appeal that a statement or confession is inadmissible because it was obtained in violation of a defendant's *Miranda* rights, we 'review independently the trial court's legal determinations . . . . We evaluate the trial court's factual findings regarding the circumstances surrounding the defendant's statements and waivers, and "'accept the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if supported by substantial evidence.'" [Citation.]" (*People v. Dykes* (2009) 46 Cal.4th 731, 751.)

Detective Fisher began the interview by clarifying whether appellant preferred to speak English or Spanish and telling him that Detective Nafarette spoke Spanish if he needed anything translated. Detective Fisher advised appellant of his *Miranda* rights and confirmed that appellant understood each one. After

8

some preliminary discussion, Detective Fisher told appellant, "All I'm supposed to do is get the information. I just get the information." Detective Nafarette reiterated, "That's all we do. Just gather information." Appellant said, "Okay." The following conversation ensued:

"[Fisher]: Okay, so . . . we're talking about Destiny, right?

"[Appellant]: Mm-hmm, yes.

"[Fisher]: Okay. And Destiny is your stepdaughter, okay, and she's about 17 now. . . . [¶] . . . so talk to me about why—why we're here.

"[Appellant]: I had forgotten all this for so many years. . . . [¶] But it came out, um, yesterday.

"[Fisher]: Okay.

"[Appellant]: They wanted to ask me. I um, I said yes, I did something. I forgot details and stuff. I don't know why I did it, but it happened. . . . [¶] I abused her. . . . [¶] And that's why I'm here, I mean. . . . [¶] You want details. I don't know how much details, but –

"[Fisher]: Okay. Well, um, we're going to have to get into some details. I don't need to know every tiny little thing, but – but there will be some details that obviously you would remember, um, that we're going to have to talk about. . . . [¶] So we're going to have to kind of delve into that a little bit . . . when did this all start, more or less, with Destiny?"

Appellant then proceeded to describe abuse of Destiny that began when she was nine years old. He explained that the situation had come to light the day before when Destiny ran away from home. Appellant's wife confronted him and told him that she had called the police, and appellant said that he would speak to the police.

9

The totality of the circumstances shows that appellant knowingly and voluntarily waived his *Miranda* rights. After acknowledging that he understood his *Miranda* rights, appellant continued to indicate his willingness to speak with the detectives. The detectives did not intimidate or coerce him but merely told him they were seeking information about the allegations. Appellant then gave the details of the abuse, responding to clarification questions from the detectives. Moreover, appellant explained that he had confessed to the family, his wife told him the police were coming, and he told her he was going to tell the police what happened. These circumstances further indicate that his decision to confess "'was the product of a free and deliberate choice rather than intimidation, coercion, or deception' [citation] . . . ." (*Sauceda-Contreras*, *supra*, 55 Cal.4th at p. 219.) The trial court thus properly denied appellant's motion to suppress evidence.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P.J.


We concur:



MANELLA, J.           COLLINS, J.

10