Filed 4/19/21  P. v. Chalquest CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRISTINE ELLEN CHALQUEST,<br><br>    Defendant and Appellant. | 2d Crim. No. B302637<br>(Super. Ct. No. 2019002076)<br>(Ventura County) |

Christine Ellen Chalquest appeals from the judgment after a jury convicted her of driving under the influence of alcohol with a qualifying prior conviction (Veh. Code,[1] §§ 23550.5, subd. (a), 23152, subd. (a); count 1), a felony, and driving with a blood alcohol content over 0.08% with a qualifying prior conviction (§§ 23550.5, subd. (a), 23152, subd. (b); count 2), a felony. Chalquest admitted she had a prior conviction for driving under

---

[1] Further unspecified statutory provisions are to the Vehicle Code.

the influence and causing bodily injury (§ 23153, subd. (a)).  The trial court placed her on probation for five years with terms, including one year in county jail.

Chalquest contends the trial court erred when it admitted into evidence her statements obtained in violation of *Miranda*.[2]  We affirm.

## FACTUAL AND PROCEDURAL HISTORY

### *The Traffic Collision*

L.B. was stopped at a traffic light around noon when Chalquest hit L.B.'s car from behind.  L.B. honked her horn to get Chalquest's attention, but Chalquest continued driving.  L.B. followed Chalquest.

When Chalquest stopped in a parking lot, L.B. approached Chalquest and asked her why she did not stop.  Chalquest "looked like she didn't seem to know exactly what happened."  Chalquest said that she knew she hit a car, but did not know what happened to the car.  L.B. had to ask Chalquest for her insurance information four times before Chalquest produced the information.

About an hour later, Chalquest drove to her place of employment.  An individual who worked next door saw Chalquest park in her usual spot in an "odd" and "crooked[]" way.  The individual also noticed the car was dented in the front.

About twenty minutes later, ambulance and firefighters arrived at the location to treat Chalquest.  Two Ventura County police officers were also dispatched to investigate an "injury collision."  When the officers arrived, Chalquest was sitting in the back of the ambulance.  Officer

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

2

Christopher Aguilar spoke to the fire captain, who said that Chalquest reported an injury from an earlier collision and that she had "consumed approximately five to ten 20-ounce alcoholic beverages."

*The Interview*

Chalquest was transported to a hospital, where the two officers interviewed her. When they arrived, Chalquest was sleeping on a hospital stretcher, and the officers had to wake her up. Aguilar testified he "immediately noticed that she had red and watery eyes, she had very slurred speech, and she had a strong odor of alcohol emitting from her body."

The interview lasted about two to three hours. During that time, the officers went "back and forth trying to talk to [Chalquest]" while they did paperwork, Chalquest went "in and out of sleep," and the medical personnel took tests and treated her.

Chalquest told the officers she "rear-ended" a car earlier that day. Aguilar asked if she had consumed alcohol or taken any medication. Chalquest responded that she had consumed alcohol and taken medication that made her drowsy "between the hours of 9:00 a.m. and noon that day." She admitted that she was "guilty" of "driving while intoxicated."

While Chalquest was answering questions, another officer began administering a horizontal gaze nystagmus test. Aguilar noticed that Chalquest's eyes were "immediate[ly] bouncing," which indicated that there was "a good amount of alcohol in her system." The officer could not complete the test because Chalquest "became uncooperative and turned her body away" from the officer. At the end of the interview, the officers placed Chalquest under arrest and gave her *Miranda* warnings.

3

Hospital personnel took a sample of Chalquest's blood at 3:42 p.m.  She had a blood alcohol content of 0.305%.  The officers found 14 empty beer bottles in a bag inside Chalquest's car trunk.

## DISCUSSION

### Custodial Interrogation

Chalquest contends the trial court erred when it admitted her interview with the officers into evidence because her statements were obtained in violation of *Miranda*.  We disagree.

*Miranda* warnings are only required when a person is subject to custodial interrogation.  (*Miranda, supra*, 384 U.S. at p. 444.)  "Custodial" means a situation in which a reasonable person in the defendant's position would not have "'felt free to end the questioning and leave.'"  (*People v. Leonard* (2007) 40 Cal.4th 1370, 1400 (*Leonard*).)

A defendant is not in custody where an officer asks "'[g]eneral on-the-scene questioning as to facts surrounding a crime . . . .'  [Citation].  A custodial interrogation does not occur where an officer detains a suspect for investigation and the questioning is limited . . . 'to obtain [sufficient] information confirming or dispelling the officer's suspicions.  [Citation.]'"  (*People v. Davidson* (2013) 221 Cal.App.4th 966, 970 (*Davidson*).)

Determining whether a person is in custody is an objective test.  (*Davidson, supra*, 221 Cal.App.4th at p. 971.)  "The totality of the circumstances is considered and includes '(1) whether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning.'  [Citation.]  Additional factors are

4

whether the officer informed the person he or she was considered a witness or suspect, whether there were restrictions on the suspect's freedom of movement, whether the police were aggressive, confrontational, and/or accusatory, and whether the police used interrogation techniques to pressure the suspect. [Citation.]" (*Id.* at p. 972.)

Whether a defendant was in custody for *Miranda* purposes is a mixed question of fact and law. (*People v. Ochoa* (1998) 19 Cal.4th 353, 401.) Where, as here, the facts are largely undisputed, we independently review the question of whether there was custodial interrogation. (*Leonard*, *supra*, 40 Cal.4th at p. 1400.)

The trial court properly found that Chalquest was not in custody. She was on a hospital stretcher during the interview, receiving treatment for her injuries. She was not formally arrested or handcuffed. Although it lasted about two to three hours, the interview was interrupted several times so that Chalquest could receive treatment, or while the officers performed other tasks. Only two officers were present, and medical personnel were also present during parts of the interview. (See *People v. Mosley* (1999) 73 Cal.App.4th 1081, 1091 [circumstances, including the presence of medical personnel treating a defendant's gunshot wound during an interview, created a non-custodial environment].)

Aguilar's questions were not aggressive, confrontational, or accusatory. He asked Chalquest preliminary questions about the traffic collision and whether she consumed alcohol or medication before the accident. (*Davidson*, *supra*, 221 Cal.App.4th at p. 970.) A reasonable person in Chalquest's position would have "'felt free to end the questioning.'" (*Leonard*,

*supra*, 40 Cal.4th at p. 1400.)  Apparently so did Chalquest, as at one point during the contact, she stopped cooperating with the officers and ended the interaction.

Chalquest cites to *People v. Caro* (2019) 7 Cal.5th 463, 490 (*Caro*), in which a defendant argued that statements made while she was treated at a hospital were obtained in violation of *Miranda*.  Our Supreme Court did not resolve whether the interaction in *Caro* constituted a custodial interrogation.  Instead, it concluded that even if the interaction "was sufficient to violate Caro's constitutional rights . . .  [the admission of the statements] was harmless beyond a reasonable doubt."  (*Id.* at p. 493.)

Moreover, *Caro* is distinguishable because the circumstances there constituted a more coercive environment.  Caro was the main suspect in the murder of her three sons.  She underwent surgery for a gunshot wound to the head on the same night of the murder.  (*Caro*, *supra*, 7 Cal.5th at p. 473.)  The day after surgery, two police officers interviewed her in her hospital room.  (*Ibid.*)  The interview was recorded, at least one officer stayed in the hospital room the entire time, and two individuals from the district attorney's office were also present for parts of the interview.  (*Id.* at p. 490.)  The interview lasted about three hours, but the questioning was intermittent.  Caro was in pain during the interview, and before she received pain medication, the hospital staff "checked in" with the officers to ensure that they would not "'mess up'" the interview.  (*Ibid.*)  Toward the end of the interview, the officer told Caro she was a suspect and gave her *Miranda* warnings.  (*Ibid.*)  The court noted that "[s]uch circumstances heighten the risk of coercion."  (*Id.* at p. 493.)  The court placed emphasis on the "constant presence of one or more

6

law enforcement officers and the suggestion of two staff members that they would not, or could not, interfere with the interview." (*Id.* at pp. 492-493.)

Here, the officers were not a "constant presence," as they went "back and forth" interviewing Chalquest while they performed other tasks. There was no suggestion that medical personnel could not interfere with the interview. Under the totality of circumstances here, Chalquest was not in custody.[3]

*Harmless Error*

In any event, any error in admitting Chalquest's statements was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *Arizona v. Fulminante* (1991) 499 U.S. 279, 306.) Even without evidence of her statements to the police officers, the evidence that she drove under the influence was overwhelming. Chalquest caused the collision and drove away from the scene. When confronted, Chalquest's responses were "odd," and she looked "like she didn't seem to know exactly what happened." She later parked her car at her workplace in an "odd" and "crooked[]" way.

After the collision, Chalquest told the fire captain that she consumed "approximately five to ten 20-ounce alcoholic beverages" that day. When Aguilar encountered her, he "immediately noticed that she had red and watery eyes, she had very slurred speech, and she had a strong odor of alcohol emitting

---

[3] Chalquest also argues that the interview constituted an interrogation for *Miranda* purposes. Because we conclude Chalquest was not in custody at the time of the interview, we need not address whether she was interrogated. Both custody and interrogation are necessary to trigger the requirement of a *Miranda* admonition. (*People v. Underwood* (1986) 181 Cal.App.3d. 1223, 1231.)

7

from her body." Chalquest's horizontal gaze nystagmus test and the blood test results showed that she was under the influence of alcohol a few hours after the accident. And, there were 14 empty beer bottles in the trunk of her car. Any error in admitting Chalquest's statements was therefore harmless.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>


TANGEMAN, J.


We concur:


GILBERT, P. J.


PERREN, J

8

Anthony J. Sabo, Judge

Superior Court County of Ventura

_____

Richard B. Lennon and Michael L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.