Filed 1/20/15  In re Destany H. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re DESTANY H., a Person Coming Under the Juvenile Court Law. | |
| | D065254 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J232569) |
| v. | |
| DESTANY H., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Carlos Armour, Judge.  Affirmed.

Amanda Fates, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

Destany H. appeals from a judgment continuing her as a ward of the court pursuant to Welfare and Institutions Code section 602 after the juvenile court made a true finding that she set fire to property in violation of Penal Code section 451, subdivision (d).[1]

Destany, who was 17 years old at the time of the offense, contends that the juvenile court erred in denying her motion to suppress evidence of the statements she made to police, in which she admitted committing the offense. Destany contends that her motion to suppress should have been granted because she was in custody at the time she made the statements but was not given a *Miranda* warning. (*Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).) We conclude that Destany was not in custody at the time she made statements to the police, and accordingly the juvenile court properly denied the motion to suppress.

I.

FACTUAL AND PROCEDURAL BACKGROUND

At around 4:00 p.m. on December 2, 2013, the manager at a large apartment complex became aware that the complex's fire alarms had been activated.[2] A maintenance supervisor investigated and gave the apartment manager a description of the

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

[2] The juvenile court ruled on the motion to suppress after all of the evidence was presented at the contested dispositional hearing. We accordingly rely on all of the evidence at the contested dispositional hearing in determining whether the juvenile court properly denied the motion to suppress.

2

suspect. The apartment manager located Destany in the alley near the complex and determined that she met the description given by the maintenance supervisor. The manager followed Destany and confronted her about setting a fire at the complex. Destany walked away from the manager, who called the police and continued to follow Destany.

When Officer Samuel Hay arrived, he saw Destany walking along the sidewalk on a public street while holding a lemon. Officer Hay said to Destany, "Hey, I'd like to talk to you." He explained to Destany that she was referenced in a radio call, and he needed to talk to her and find out what was going on. Officer Hay patted down Destany and asked her to lean against the wall next to the sidewalk. A police dog was in the back of Officer Hay's car, but the dog did not come out of the car, and the car windows are heavily tinted so the dog was not visible, though it may have been barking.

After approximately a minute and a half, Officer Jason Thompson arrived and spoke with the apartment manager, who was waiting nearby. The apartment manager reported to Officer Thompson that she saw Destany burn a piece of plastic at the apartment complex.

Officer Thompson then returned to Destany and Officer Hay. Officer Thompson said to Destany, "Hey, I talked to some people that saw what happened." He asked Destany, "Why are we here? Why are we talking to you? It would go a lot easier if you're honest and we talked about what happened." Officer Thompson said something such as, "What's your side of the story of why we're here today?" During the questioning, Officer Thompson's demeanor was easy going and calm. Officer Hay was

3

standing approximately three to six feet away from Officer Thompson while Destany was questioned.

After first stating that she did not know why the police officers had stopped her, Destany said that she was pulling fire alarms and set on fire a plastic page protector. Based on Destany's statements, Officer Thompson arrested Destany and advised her of her *Miranda* rights. Destany then indicated that she no longer wanted to speak with Officer Thompson.

A petition filed under Welfare and Institutions Code section 602 alleged that Destany unlawfully set fire to property (§ 451, subd. (d)) (count 1) and unlawfully attempted to burn a structure (§ 455) (count 2).

At the contested dispositional hearing, the juvenile court ruled that Destany was not in custody while Officer Thompson was questioning her, and it accordingly denied the motion to suppress evidence of Destany's statements to the officers. The juvenile court then made a true finding that Destany set fire to property in violation of section 451, subdivision (d), and it dismissed count 2. The juvenile court continued Destany as a ward of the court, placed her on probation, and committed her to the "Short Term Offender Program."

## II.

## DISCUSSION

The only issue on appeal is whether the juvenile court erred in denying the motion to suppress evidence of the statements that Destany made to Officer Thompson, in which she admitted setting a fire. Destany contends that the statements should have been

4

suppressed because she was in custody at the time she made the statements but had not been given a *Miranda* warning.

The general rule excluding statements obtained in violation of *Miranda* is well established. "*Miranda . . .* , *supra*, 384 U.S. 436, and its progeny protect the privilege against self-incrimination by precluding suspects from being subjected to custodial interrogation unless and until they have knowingly and voluntarily waived their rights to remain silent, to have an attorney present, and, if indigent, to have counsel appointed." (*People v. Gamache* (2010) 48 Cal.4th 347, 384.) Statements obtained in violation of *Miranda* are generally inadmissible to establish guilt. (*People v. Sims* (1993) 5 Cal.4th 405, 440.) " 'Absent "custodial interrogation," *Miranda* simply does not come into play.' " (*People v. Ochoa* (1998) 19 Cal.4th 353, 401.)

The standard of review that applies to the trial court's ruling on the issues of custody and interrogation is well-settled. "While a reviewing court must apply a deferential substantial evidence standard to the trial court's factual findings, it must independently determine whether the defendant was *in custody*." (*People v. Bejasa* (2012) 205 Cal.App.4th 26, 38, italics added (*Bejasa*).) As it is primarily a factual determination, "[w]e review the trial court's finding regarding whether *interrogation* occurred for substantial evidence or clear error." (*People v. Clark* (1993) 5 Cal.4th 950, 985, italics added.) Here, as we will explain, we need not reach the issue of whether Destany was interrogated, as we conclude that Destany was not in custody at the time Officer Thompson questioned her.

5

"An interrogation is custodial when 'a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' [Citation.] Whether a person is in custody is an objective test; the pertinent inquiry is whether there was ' " 'a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' " ' " (*People v. Leonard* (2007) 40 Cal.4th 1370, 1400 (*Leonard*).) The essential inquiry is whether, based on the trial court's factual findings regarding the circumstances surrounding the interrogation, " 'a reasonable person in [the] defendant's position would have felt free to end the questioning and leave.' " (*Ibid*.) " 'In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation . . . .' " (*Bejasa*, *supra*, 205 Cal.App.4th at p. 35.)

"California courts have identified a number of factors relevant to [the custody] determination. While no one factor is conclusive, relevant factors include: ' "(1) [W]hether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning." ' [Citations.] [¶] Additional factors include: '[W]hether the suspect agreed to the interview and was informed he or she could terminate the questioning, whether police informed the person he or she was considered a witness or suspect, whether there were restrictions on the suspect's freedom of movement during the interview, and whether police officers dominated and controlled the interrogation or were "aggressive, confrontational, and/or accusatory," whether they pressured the suspect, and whether the suspect was arrested at

6

the conclusion of the interview.' " (*Bejasa*, *supra*, 205 Cal.App.4th at pp. 35-36.) "[T]he term 'custody' generally does not include 'a temporary detention for investigation' where an officer detains a person to ask a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." (*People v. Farnam* (2002) 28 Cal.4th 107, 180 (*Farnam*).)

Moreover, as relevant here, the United States Supreme Court has held that a child's age may be relevant to the custody determination for purposes of *Miranda* warnings because "[i]n some circumstances, a child's age 'would have affected how a reasonable person' in the suspect's position 'would perceive his or her freedom to leave.' " (*J. D. B. v. North Carolina* (2011) 564 U.S. __ [131 S.Ct. 2394, 2402-2403].) For example, "[a] student — whose presence at school is compulsory and whose disobedience at school is cause for disciplinary action — is in a far different position than, say, a parent volunteer on school grounds to chaperone an event, or an adult from the community on school grounds to attend a basketball game." (*J. D. B.*, *supra*, 564 U.S. __ [131 S.Ct. at p. 2405].) However, "a child's age will [not] be a determinative, or even a significant, factor in every case." (*J. D. B.*, *supra*, 564 U.S. __ [131 S.Ct. at p. 2406].)

Here, the totality of the circumstances show that Destany was merely being temporarily detained while Officer Thompson and Officer Hay investigated the situation to determine whether she had been accurately identified by the apartment manager as the person who had set a fire. Destany's movement was not physically restrained by handcuffs or confinement. Instead, Destany had been asked to lean against the wall and was permitted by the officers to continue to pick at a piece of fruit that she was holding in

7

her hands.  Officer Hay conducted a patdown of Destany, but under the circumstances that brief physical interaction with Destany did not amount to placing her in custody. (See *In re Joseph R.* (1998) 65 Cal.App.4th 954, 957 [defendant not in custody though initially handcuffed and told to sit in police car for five minutes before questioning began].)

There is no indication that either Officer Thompson or Officer Hay were aggressive or that they pressured Destany.  Instead, the uncontradicted evidence was that Officer Thompson's manner was easygoing and calm.  Moreover, the content of the officers' statements to Destany was not confrontational.  Officer Hay initiated the contact with Destany by neutrally stating that he would "like to talk to" her and told her that he was speaking with her to get her side of the story.  Significantly too, the length of the detention was not great, lasting only long enough for the officers to investigate the situation.

Although Destany argues that the officers put undue psychological pressure on her by purportedly confronting her with accusations of guilt and confining her, she does not accurately describe the situation based on the evidence.  The officers' comments made it clear that they were merely investigating the situation based on a witness report, not that they had already determined that Destany had committed an offense.  "General on-the-scene questioning may take place of persons temporarily detained by officers who do not have probable cause to arrest.  Questioning under these circumstances is designed to bring out the person's explanation or lack of explanation of the circumstances which aroused the suspicion of the police, and thus enable the police to quickly ascertain

whether such person should be permitted to go about his business or held to answer charges." (*People v. Milham* (1984) 159 Cal.App.3d 487, 500 (*Milham*).)[3] Further, contrary to Destany's contention, she was not confined. Instead she was asked to stand next to a wall by a public sidewalk and was not in a confined space such as a room or a police car. (*People v. Davidson* (2013) 221 Cal.App.4th 966, 972 (*Davidson*) [suspect questioned on public sidewalk in response to a witness report of a theft was not in custody, in part because of the location of the detention in a public space].)

Although Destany was 17 years old and not an adult, in light of the officers' neutral and nonconfrontational questioning, the fact that Destany was not in any physical restraints or in a confined space, and the fact that Destany was not in a place such as a school where minors are controlled and monitored, there is no basis to conclude that a reasonable person of Destany's age would be any more pressured than an adult in her situation.

---

3    Destany argues that the People's citation to *Milham*, *supra*, 159 Cal.App.3d 487, 500, is inapposite because in *Milham* the police questioned the defendant when investigating a traffic accident rather than following up on a witness's report of a crime and description of a suspect. However, neither we nor the People cite *Milham* for its specific facts. Instead, that case is applicable because of the uncontroversial principle it explains: in general, a police officer may temporarily and briefly detain a suspect while investigating whether there is probable cause to arrest that person without creating a custodial situation requiring *Miranda* warnings. (See *Farnam*, *supra*, 28 Cal.4th at p. 180 [custody generally does not include " 'a temporary detention for investigation' where an officer detains a person to ask a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions"]; *Davidson*, *supra*, 221 Cal.App.4th at p. 972 [defendant was not in custody, when in response to the report of a motorcycle theft by a man matching the defendant's description, officer stopped, handcuffed and questioned defendant, explaining that he was being investigated for a possible theft].)

Based on the totality of the circumstances, we conclude that there was no " ' " ' "restraint on freedom of movement" of the degree associated with a formal arrest.' " ' " (*Leonard*, *supra*, 40 Cal.4th at p. 1400.) At the point Destany was questioned, the officers had only temporarily detained her to investigate the situation. Accordingly, Destany was not in custody, and the juvenile court properly determined that *Miranda* did not apply.

DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:


NARES, Acting P. J.


AARON, J.