Filed 4/27/22  P. v. Tolosa CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>LOPE ELWIN TOLOSA,<br><br>　　　　Defendant and Appellant. | C090907<br><br>(Super. Ct. No. 19FE009270) |

A jury found defendant Lope Elwin Tolosa guilty of vehicle theft, driving under the influence, driving while privileges were suspended or revoked for a prior conviction for driving under the influence, and possession of drug paraphernalia.  He now claims his conviction for vehicle theft should be reversed, because statements he made to police officers were obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436, and erroneously admitted at trial.  He further contends the trial court erred in denying his motion to dismiss his prior strike conviction under *People v. Superior Court (Romero)* (1996) 13 Cal.3d 497 (*Romero*), and in its imposition of fines and fees.  In supplemental

1

briefing, he argues that the imposition of the upper term on count one was improper in light of Penal Code section 1170, as amended by Senate Bill No. 567 (Stats. 2021, ch. 731, § 1.3.) (Senate Bill No. 567).

We agree with the final contention and shall remand the matter to the trial court for full resentencing, including relitigation of fines and fees such that we need not reach that issue on appeal. We otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with unlawfully driving/taking a vehicle valued at more than $950 (Veh. Code, § 10851, subd. (a); count one), receiving stolen property (Pen. Code, § 496d, subd. (a); count two),[1] driving under the influence (DUI) (Veh. Code, § 23152, subd. (g); count three), driving while privileges are suspended or revoked for a prior DUI (*id*., § 14601.2, subd. (a); count four), and possession of drug paraphernalia (Health & Saf. Code, § 11364; count five). The prosecution also alleged defendant had a prior strike conviction for assault with a firearm.

Igor Kalenyuk, an employee at East Lawn Memorial Park Cemetery, saw defendant erratically driving a yellow Jeep on cemetery grounds during a Memorial Day service. Defendant shouted "hello" and "how's everybody doing?" to mourners and spectators. Kalenyuk stopped the Jeep and asked defendant to be quiet. Defendant backed up in the Jeep, repeatedly going on and off the curb and just missed hitting an older couple on foot. Kalenyuk called the police.

Responding Officers Max Bruce and Bradley Nelson found defendant standing near a yellow Jeep that was parked on a cemetery roadway. Bruce thought defendant showed signs of intoxication, with slurred speech, bloodshot, watery eyes, and unsteady

---

[1] Further undesignated statutory references are to the Penal Code.

gait. He used his arm to balance himself against the Jeep and he had a difficult time maintaining focus. Bruce suspected defendant was DUI.

The prosecutor showed the jury footage from the officers' body and car cameras that recorded the encounter with defendant, and the jury was given transcripts in order to follow along with the video. The footage showed that Nelson approached and greeted defendant; defendant responded with a non-sequitur: "If I really know where I live I would really go there right"; he then offered that he had a prior conviction for DUI. Nelson responded by asking if he was "drunk right now" or if he had been drinking, to which defendant replied no but then volunteered: "I need some drugs. You guys got any good drugs?" Nelson replied no and asked him what drugs he was on, to which defendant replied: "I don't know but I'm gonna return this shit though" gesturing toward the car. Nelson clarified he meant the Jeep and then asked how he got it; defendant then admitted to taking the Jeep without permission near the Ace Hardware store in Sacramento. He explained that no one was around, so he drove the Jeep away. He said there were no keys, but certain cars did not need keys to drive them. The officers then arrested him.

The footage also showed Bruce reading defendant his rights under *Miranda* and defendant's subsequent statements. Defendant repeated his admissions and elaborated that all he had to do was stick a flathead screwdriver in the ignition; the car started up and he drove away. He also said he had one sip or shot of cognac that day and he had smoked methamphetamine earlier.

Defendant's blood-alcohol level was 0.021 percent and he tested positive for methamphetamine.

The yellow Jeep belonged to another and was worth about $5,500. The owner did not know defendant or give him permission to drive the Jeep. She normally parked the Jeep in a carport across the alley from an Ace Hardware store in Sacramento.

The jury found defendant not guilty of receiving stolen property (§ 496d, subd. (a)) but guilty of all remaining counts and found true the allegation that the value of the Jeep was greater than $950.  In a bifurcated trial, the court found the prior strike allegation true.  The court denied defendant's *Romero* motion and sentenced him to the upper term of four years in prison, doubled due to the prior strike, for a total of eight years on the unlawful taking of the Jeep.  The court also sentenced defendant to 30 days for the DUI (count three) and 30 days for the possession of drug paraphernalia conviction (count five), both concurrent, with a stayed sentence (§ 654) of no additional time for driving with revoked privileges (count four).  It imposed a restitution fine of $300 under section 1202.4, subdivision (b), with the same amount imposed and stayed under section 1202.45 for count one, and $150 amounts under section 1202.4, subdivision (b) only (with no corresponding section 1202.45 fines) for each of counts three and five, as well as the required assessments under section 1465.8 ($160) and Government Code section 70373 ($120).

Defendant appealed; although the notice of appeal was filed in November 2019, due to multiple continuances in securing the augmented record and both parties' briefing, the case was not fully briefed until September 14, 2021, and was assigned to this panel thereafter.  After the case was set for oral argument, defendant requested to vacate the argument date and file supplemental briefing.  We continued the argument date and ordered supplemental briefing; that briefing was complete on March 15, 2022.  The matter was argued and placed under submission on April 18, 2022.

DISCUSSION

I

*Denial of Motion to Suppress*

Defendant first contends that his initial statements were obtained while he was subject to custodial interrogation but without the benefit of warnings under *Miranda v.*

4

*Arizona, supra*, 384 U.S. 436, and thus these statements were erroneously admitted at trial. We disagree.

A. *Additional Background*

Prior to trial, defendant moved to suppress his pre-*Miranda* statements, arguing that from the time the officers first approached him, he was subject to custodial interrogation. He also argued that his post-*Miranda* statements should be excluded based on taint.

At the hearing on the motion, the trial court reviewed roughly 25 minutes of body camera video footage of Officers Bruce and Nelson, that included the moment of approach to the moment of arrest. Bruce's camera showed that he turned onto a narrow cemetery roadway where defendant was parked and leaning against a yellow Jeep; he then parked his marked SUV against the opposite curb with space between the SUV and the jeep. Nelson parked behind Bruce.

Bruce walked to the Jeep and asked defendant for his driver's license. Defendant admitted he did not have one and put his hands behind his back but continued to face the officers in a calm manner. At that point, Nelson walked behind defendant and peered through the Jeep windows as he walked around the vehicle. Nelson reported a sticker on the back license plate and Bruce responded that "this might be a 10-8" (suggesting Veh. Code, § 10851). Bruce went back to his car to obtain information on defendant.

Meanwhile, defendant sat down on the front bumper of the Jeep, where he lounged on one arm while Nelson spoke to him. Nelson's body camera recorded that conversation, the relevant portions of which we have already related *ante*.

After the conversation, the officers handcuffed defendant, emptied his pockets, and placed him in the back of Bruce's SUV. The officers then looked through the Jeep and found bottles of alcohol, both empty and containing liquid. When another SUV drove up and attempted to pass, Bruce moved his SUV.

5

Bruce then informed defendant of his rights under *Miranda* and defendant confirmed his earlier admissions and made several additional incriminating statements, as we have related *ante*.

The trial court denied the motion to suppress, finding that defendant was detained for an investigatory (DUI) traffic stop but was not in custody for purposes of *Miranda*. It noted that there were two officers, no guns were drawn, and defendant was not physically restrained in any way. The court found the questions were investigatory in nature and were "friendly, low key, [and] subdued"; any shift in the nature of the conversation was in response to defendant's volunteered statement about the Jeep.

B. *Analysis*

*Miranda* requires that a person be advised of specific rights and warnings prior to a custodial interrogation by law enforcement. (*People v. Flores* (2020) 9 Cal.5th 371, 417.) Generally, statements elicited in violation of *Miranda* may not be used against a defendant at trial. (*People v. Storm* (2002) 28 Cal.4th 1007, 1029.)

The prophylactic *Miranda* protections are triggered only if a person is subjected to a custodial interrogation. (*People v. Ochoa* (1998) 19 Cal.4th 353, 401.) The test for whether an individual not under formal arrest is in custody depends on objective circumstances of the person being questioned and "whether 'a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.' " (*Id.* at p. 402, quoting *Thompson v. Keohane* (1995) 516 U.S. 99, 112.) "[P]ersons temporarily detained for brief questioning by police officers who lack probable cause to make an arrest or bring an accusation need not be warned about incrimination and their right to counsel, until such time as the point of arrest or accusation has been reached or the questioning has ceased to be brief and casual and become sustained and coercive." (*People v. Manis* (1969) 268 Cal.App.2d 653, 669.) Absent deliberately coercive or improper tactics in obtaining a statement, the fact that information gathered from these routine questions or casual conversations turns out to be incriminating does not in and of

6

itself render the statements inadmissible. (See *People v. Storm, supra*, 28 Cal.4th at pp. 1030-1031.)

On appeal from the denial of a *Miranda* exclusionary motion, where the evidence is uncontradicted, we conduct an independent review to determine whether the challenged statements were illegally obtained. (*People v. Flores, supra,* 9 Cal.5th at p. 418.)

Defendant argues that the entire encounter was coercive such that the investigatory nature of the stop quickly morphed into a custodial interrogation, pointing out repeatedly in his briefing that defendant offered several times to "return" the Jeep (presumably by driving it away) if the officers were finished talking to him. But the fact that the officers did not at that point offer defendant (who did not appear capable of safely operating a car, as is clear from inspection of the audio and video evidence in the record) an opportunity to resume driving the Jeep is not dispositive as to his custodial status as defined by *Miranda*. "Not all restraints on freedom of movement amount to custody for purposes of *Miranda*." (*Howes v. Fields* (2012) 565 U.S. 499, 509.) *Miranda* applies where the relevant environment presents the same inherently coercive pressures as the type of station house questioning. (*Ibid*.) The totality of the circumstances is considered and includes "(1) whether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning." (*People v. Forster* (1994) 29 Cal.App.4th 1746, 1753.) "Additional factors are whether the officer informed the person he or she was considered a witness or suspect, whether there were restrictions on the suspect's freedom of movement, whether the police were aggressive, confrontational, and/or accusatory, and whether the police used interrogation techniques to pressure the suspect." (*People v. Davidson* (2013) 221 Cal.App.4th 966, 972.)

Here, the recordings of the encounter provide ample evidence that defendant was temporarily detained while the officers investigated the report of erratic driving (followed

quickly by suspicion of DUI) but was not in custody for *Miranda* purposes until he was placed in handcuffs. Under the totality of the circumstances, as described in detail *ante*, there were no environmental factors that present even close to the same coercive pressures as inherent in a station house questioning.

First, defendant was not confined by the officers; he had stopped voluntarily, left the Jeep, and was leaning against it, parked on a semi-public roadway. Bruce parked his SUV next to the curb on the roadway facing defendant but with significant space between defendant and the parked SUV. Nelson parked behind Bruce, leaving a path behind the Jeep open. Although Bruce had to move his SUV to let another SUV pass comfortably, there is no evidence that the roadway was blocked by the officers as defendant claims.

Further, it is clear that defendant was not physically restrained, and was able to stand, lean, or sit on the Jeep and even turn away from the officers and move around, as depicted by the videos. His movement was unrestricted until his arrest. The two officers took turns speaking with defendant and often only one officer was present; at all times, the interaction between the officers and defendant was relaxed and amicable (although in defendant's case it was often disconnected and full of non-sequiturs).

The encounter was also brief. Before five minutes had passed, as we have described, defendant presented as confused and incoherent, brought up a prior DUI, asked the officers for drugs, and raised the status of the Jeep, gesturing toward it and volunteering that he would "return it." When the officers asked a few follow up questions about the Jeep's status, defendant admitted to taking the Jeep without permission or keys. These statements provided probable cause for arrest without the need to test for DUI; at that point, defendant was handcuffed, placed in the back of Bruce's SUV, and not asked further questions until after he was *Mirandized*. Prior to his arrest, on these facts, defendant was not in custody and *Miranda* did not apply. (*Bobby v. Dixon* (2011) 565 U.S. 23, 28.) The trial court did not err in so finding.

8

II

*Denial of Romero Motion*

Defendant next contends the trial court erred in refusing to strike his prior serious felony conviction under the three strikes law; he argues that he is outside the spirit of that law. We see no abuse of discretion.

A. *Additional Background*

Prior to sentencing, defendant requested that the trial court strike his prior strike (a 1996 section 245, subdivision (a)(2) conviction) under section 1385 and *Romero, supra*, 13 Cal.3d 497. Defendant had sustained at least 20 convictions since 2011; of those, one was a felony, from 2016. He had consistently committed his crimes while on probation and had sustained at least six probation violations.

At the sentencing hearing, the trial court acknowledged that most of defendant's numerous past convictions were nonviolent misdemeanors but noted that defendant "seems to have a penchant for simply thumbing his nose at the entire system." Accurately noting that the "three strikes scheme is directed at repeat offenders," the court twice emphasized that the "sheer number" of defendant's cases signaled his repeat offender status and proper place within the three strikes law. The court indicated that it had considered the "general objectives of sentencing" as well as defendant's "lack of prospects" as outlined by the probation report and concluded that defendant came "within the scheme of the three strikes law" despite the fact that his recent cases were misdemeanors, denying the *Romero* motion.

B. *Analysis*

An appellate court will not disturb the trial court's refusal to dismiss a strike absent an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.) "Discretion is also abused

when the trial court's decision to strike or not to strike a prior is not in conformity with the 'spirit' of the law." (*People v. Philpot* (2004) 122 Cal.App.4th 893, 905.)

Given the trial court's analysis and observations as outlined above, we cannot say the decision to deny defendant's *Romero* motion was irrational or arbitrary. Nor can we agree that defendant's circumstances are such that he falls outside the spirit of the three strikes scheme *as a matter of law*. Indeed, no matter the unfortunate cause of his circumstances, he is a serial recidivist. Although the trial court's decision *could* have gone the other way, the court made no incorrect observations regarding defendant's status as a recidivist with minimal prosects who had repeatedly cycled through the criminal justice system and yet continued to engage in illegal activity. Its classification of defendant as inside the heartland of the three strikes law did not constitute an abuse of its discretion.

### III

### *Senate Bill No. 567*

In supplemental briefing, defendant argues that his upper term sentence on count one cannot stand in light of new legislation modifying the guidelines for the imposition of an upper term sentence. The People agree that the new legislation applies retroactively to defendant's case but contend that any error in imposing the upper term is harmless. We conclude that the sentence must be vacated and the cause remanded for resentencing under the new guidelines provided through Senate Bill No. 567 and any other applicable now current law.

### A. *Additional Background*

During sentencing, the trial court noted that although many of defendant's prior convictions were misdemeanors, "the sheer number of them over a compressed period of time" warranted imposition of the upper term. The court also agreed with the probation report's recitation of the "various aggravating factors under rule 4.421[(b)(1) through (b)(5)]." These aggravating factors state that defendant: (1) engaged in violent conduct

10

which indicates a serious danger to society; (2) has prior convictions as an adult that are numerous or of increasing seriousness; (3) served a prior prison term; (4) was on probation when the crime was committed; and (5) had prior unsatisfactory performance on probation.

B.  *Analysis*

At the time defendant was sentenced, former section 1170 provided that when a judgment of imprisonment is to be imposed and a statute specifies three possible terms, "the choice of the appropriate term shall rest within the sound discretion of the court." (Former § 1170, subd. (b).)  To inform the sentencing court's decision, the California Rules of Court list various circumstances in aggravation and mitigation.

Senate Bill No. 567 amended section 1170, effective January 1, 2022.  Under the newly amended version of section 1170, when a judgment of imprisonment is to be imposed and a statute specifies three possible terms, "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in [§ 1170, subd. (b)(2)]."  (§ 1170, subd. (b)(1).)  Section 1170, subdivision (b)(2) provides that the trial court may impose a sentence exceeding the middle term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." Under section 1170, subdivision (b)(3), a trial court can consider a defendant's prior convictions when making its sentencing decision based on a certified record of conviction without submitting the prior conviction to a jury.

Nothing in the statutory language or legislative history of Senate Bill No. 567 indicates that the amendments to section 1170 were intended to apply prospectively only. Moreover, Senate Bill No. 567 is an ameliorative statute because it provides for a presumptive middle term absent the presence of circumstances in aggravation that either

must be stipulated to by the defendant or proven beyond a reasonable doubt at trial. (§ 1170, subd. (b)(2).) Enacting restrictions on the trial court's discretionary ability to impose an upper term under section 1170 constitutes an ameliorative change in the law by reducing the possible punishment for certain defendants. (See *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303; *In re Estrada* (1965) 63 Cal.2d. 740, 744.) Thus, we agree with the parties that under *Estrada*, Senate Bill No. 567's amendments to section 1170, subdivision (b) apply to defendant's case.

Nevertheless, the People argue that the upper term sentence should remain as is, because under subdivision (b)(3) a trial court may rely on certified records of conviction to impose the upper term and two such records were introduced in this case. While it is true that two out of over 20 convictions were proved by certified records of conviction, the trial court emphasized that the imposition of the upper term was based on the "sheer number" of prior convictions. As such, we cannot conclude from the record that the court would have imposed the upper term based solely on the certified convictions. Further, we cannot agree that the error in failing to comply with the dictates of the new statute is harmless because a jury would have found the aggravating circumstances to be true beyond a reasonable doubt. It is too speculative to conclude, based on this record, that all of the factors relied upon by the trial court would have been found true beyond a reasonable doubt. Nor can we conclude that proof of any subset of factors would be sufficient to justify the imposition of the upper term. Thus, we agree with defendant that resentencing is required. Given that the laws governing discretionary decisions made by trial judges at sentencing have rapidly evolved since the time of defendant's conviction by jury, we remand the matter for full resentencing, where defendant may raise any arguments available to him, including his arguments regarding multiple uses of the same conviction to enhance his sentence and his arguments re error in imposing certain fines and fees. (See *People v. Ramirez* (2019) 35 Cal.App.5th 55, 64 [when a case is remanded

for resentencing, the trial court may consider the entire sentencing scheme and has jurisdiction to modify any aspect of a defendant's sentence].)

## DISPOSITION

Defendant's sentence is vacated, and the matter is remanded for a full resentencing. In all other respects, the judgment is affirmed.


_____/s/_____
Duarte, J.


We concur:


_____/s/_____
Blease, Acting P. J.


_____/s/_____
Hoch, J.