Filed 6/8/22  P. v. Vasquez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ADRIAN ISAAC VASQUEZ,<br><br>    Defendant and Appellant. | F080332<br><br>(Super. Ct. No. 18CR-01150)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  Jeanne E. Schechter, Judge.

Suzanne M. Morris and Devon Stein, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, Jennifer Oleksa and Cavan M. Cox II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Peña, J. and Smith, J.

INTRODUCTION

Adrian Isaac Vasquez (defendant) appeals his convictions stemming from two separate incidents where law enforcement found him in possession of another person's vehicle. The incidents occurred on January 22, 2018, and May 7, 2018, respectively.

Defendant's appeal primarily raises a *Miranda*[1] issue. He claims the trial court erred when it denied his motion to suppress certain statements he made to law enforcement during the January 22, 2018 incident.

In supplemental briefing, defendant asks for resentencing in light of Assembly Bill No. 518 (2021–2022 Reg. Sess.) (Assembly Bill 518).

We will remand the matter for resentencing in accordance with Assembly Bill 518. We affirm the judgment in all other respects.

## FACTUAL BACKGROUND

*THE JANUARY 22, 2018 INCIDENT*

As he was leaving a store in Merced County, Eric Hickman observed a white truck traveling at 75 to 80 miles per hour. Hickman heard a crash 10 to 15 seconds later. When he walked over to the scene, Hickman saw defendant attempting to free himself from the truck by kicking the windshield.

California Highway Patrol Officer Gregory McCrea arrived at the scene and saw a white Chevrolet truck on its side. McCrea saw defendant sitting on a concrete pillar talking to another person through a chain-link fence. He detained defendant and placed him in an ambulance shortly after it arrived. McCrea removed defendant's handcuffs after he placed him in the ambulance. McCrea then left the ambulance to speak with other witnesses. When McCrea returned, he asked defendant if he was okay and defendant stated, "I'm not going back for this." McCrea stated it was not illegal to get

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

into a motor vehicle accident and defendant responded, "[i]t is illegal to take somebody's stuff." McCrea eventually released defendant to ambulance personnel.[2]

Later that day, McCrea confirmed the vehicle belonged to Gary Marquez. Marquez told him that on the previous day he asked an unidentified person to give him a ride because he is legally blind. Thereafter, McCrea watched surveillance footage from the gas station where Marquez's vehicle was taken. The video showed Marquez getting out of his truck along with an unidentified person. While Marquez and the unidentified person argued outside the truck, another passenger moved over to the driver's seat and drove away.

### THE MAY 7, 2018 INCIDENT

On May 7, 2018, Merced Police Officer Nathan McKinnon responded to a vehicle blocking an alley. After attending to another call, McKinnon returned and observed defendant pushing the vehicle. Defendant told McKinnon he was going to return the vehicle but did not know to whom it belonged. Defendant ran away after McKinnon attempted to detain him. Eventually, McKinnon tackled defendant and placed him in the back of his patrol vehicle. The vehicle's owner, Debra Alloway, responded to the scene and informed McKinnon that she did not know defendant and never gave him permission to take her vehicle.

### CRIMINAL CHARGES AND TRIAL

A first amended consolidated information charged defendant with: felony taking or driving a vehicle without the owner's consent (Veh. Code, § 10851; count 1); felony receipt of a stolen vehicle (Pen. Code, § 496d; count 2);[3] and attempted misdemeanor petty theft (§§ 664/484, subd. (a); count 3) arising from the January 22, 2018 incident. It

---

[2] McCrea's interaction with defendant is described in greater detail in Part I.A.1, *post*.

[3] All statutory references are to the Penal Code unless otherwise noted.

further charged defendant with felony taking or driving a vehicle without the owner's consent (Veh. Code, § 10851; count 4) and felony receipt of a stolen vehicle (§ 496d; count 5) arising from the May 7, 2018 incident.

Prior to trial, defense counsel requested an Evidence Code section 402 hearing to suppress defendant's statements to McCrea. Defense counsel argued "[t]here was a discussion regarding my client's statements regarding that he wasn't going back for this, and it's illegal to take other people's things[, and] Officer McCrea spoke with him, asked him questions, elicited those responses without *Miranda*, and the Court should not allow those statements to come into evidence." The trial court denied defendant's motion.

On May 23, 2019, a jury convicted defendant on all counts. On September 20, 2019, the trial court sentenced defendant on count 5 to the middle term of three years doubled pursuant to the "Three Strikes" law (§§ 667(b)–(i), 1170.12, subds. (a)–(d)), plus an additional two-year enhancement pursuant to section 12022.1 for a total of eight years. On count 4, the court imposed a concurrent midterm sentence of three years doubled pursuant to the Three Strikes law for a total of six years and stayed the sentence pursuant to section 654. Finally, with respect to counts 1 and 2, the trial court imposed midterm sentences of three years doubled pursuant to the Three Strikes law and stayed those sentences pursuant to section 654 as well.

On November 19, 2019, defendant timely filed his notice of appeal.

## ANALYSIS

### I. Denial of Defendant's Motion to Suppress

Defendant argues he made certain incriminating statements to McCrea without receiving an adequate *Miranda* warning and the trial court should have suppressed those statements. In his reply brief, defendant clarifies the incriminating statements are his comments to McCrea that he was "not going back for this" and "[i]t is illegal to take somebody's stuff."

4

We conclude the trial court did not err because defendant was not interrogated within the meaning of *Miranda*.

### A.      Relevant Factual Background

McCrea testified outside the presence of the jury on May 16, 2019, regarding his interaction with defendant.

### 1.      McCrea's Testimony

McCrea responded to an overturned vehicle and when he arrived, he saw defendant sitting on a concrete pillar. When defendant saw McCrea, defendant started walking towards him and insisted on going to the hospital. McCrea asked defendant his name and defendant replied it was "son" and, when asked again, said it was "dad." Another time, defendant responded his name was "Angel."

McCrea handcuffed defendant because of the abnormal responses and because he received reports the "responsible driver" of the overturned vehicle was attempting to carjack people. McCrea detained defendant outside of his patrol vehicle. Defendant "was not free to go" at this point.

After an ambulance arrived, McCrea placed defendant in the back of the ambulance and continued to try to get his name and ask what happened. When McCrea asked defendant if he knew where he was, defendant replied he had "died and gone to heaven." McCrea asked defendant about his probation and parole status and defendant told him he was not on probation, parole, or supervision.

McCrea eventually removed defendant's handcuffs. He then left to speak to other witnesses because defendant "just wouldn't answer any questions in a way that made any sense .…" Even though defendant was not handcuffed, McCrea testified defendant was not free to leave.

McCrea eventually learned defendant was on parole and he went back to the ambulance. Defendant, not in handcuffs, moved towards the double doors when McCrea

entered and McCrea asked defendant if everything was okay. Defendant responded, "I'm not going back for this." McCrea responded that it was not illegal to get into a motor vehicle accident and defendant stated that "it is illegal to take somebody's stuff."

Defendant left the ambulance and walked toward the accident scene. McCrea walked with him and asked him questions about the collision. Defendant responded he was driving too fast.

McCrea attempted to perform a field sobriety test but stopped because defendant refused to cooperate. McCrea never placed defendant under arrest and defendant was transported to a trauma center in Modesto.

During defendant's interaction with McCrea, at least three other officers arrived to the accident scene. One officer stood outside the double doors of the ambulance while defendant was inside.

### 2. The Trial Court's Ruling

The trial court found the facts indicated "basically an investigative detention" and that defendant was not in *Miranda* custody. The court elaborated:

> "I recognize he was placed in handcuffs. But under—when looking at the totality of the circumstances, which is what the Court looks at, that was done for officer's safety reasons because [defendant] was acting a little bit oddly. And ultimately he was unhandcuffed and allowed to move around the scene freely. Nobody tried to stop him and re-handcuff him. We didn't hear any of that testimony.
>
> "The questioning—I'm still not entirely clear on all the questioning, but it seems like the biggest issues really are what was said in the ambulance with regard to, you know, 'I'm not going back for this' and 'it is illegal to steal someone's stuff.' I understand there were some other things, but I don't even find in that regard there was any express—or there was any interrogation.
>
> "There weren't any words or actions on the part of the officer that were reasonably likely to elicit an incriminating response from the defendant. All the officer asked … was if he was okay. And the defendant in—to respond to that said, 'I'm not going back for this.' And the officer

6

just made a comment because he didn't—you know, it was a strange thing to say. It's not illegal to be involved in an auto collision.

"So he's not even asking him questions. He's just making a comment. And I don't find a comment like that to be reasonably likely to elicit an incriminating response. So I do find that the People have met their burden by a preponderance of the evidence, and I'm going to deny the motion to suppress."

## B. Standard of Review

The trial court's decision to grant or deny a motion to suppress a statement pursuant to *Miranda* receives de novo review. (*People v. Waidla* (2000) 22 Cal.4th 690, 730.) "As for each of the subordinate determinations, it employs the test appropriate thereto. That is to say, it examines independently the resolution of a pure question of law; it scrutinizes for substantial evidence the resolution of a pure question of fact; it examines independently the resolution of a mixed question of law and fact that is predominately legal; and it scrutinizes for substantial evidence the resolution of a mixed question of law and fact that is predominantly factual." (*Ibid*.)

## C. Analysis

Defendant challenges the trial court's finding that he was not in custody for *Miranda* purposes and that he was not subject to police interrogation. Accordingly, defendant claims the incriminating statements should have been suppressed and the trial court's ruling caused prejudicial error.

The Fifth Amendment's privilege against self-incrimination precludes a suspect from being subject to a custodial interrogation " 'unless he or she knowingly and intelligently has waived the right to remain silent, the presence of an attorney, and, if indigent, to appointed counsel.' " (*People v. Sapp* (2003) 31 Cal.4th 240, 266, quoting *People v. Cunningham* (2001) 25 Cal.4th 926, 992.) " ' "If a suspect indicates 'in any manner and at any stage of the process,' prior to or during questioning, that he or she wishes to consult with an attorney, the defendant may not be interrogated." ' " (*People v.*

*Storm* (2002) 28 Cal.4th 1007, 1021, quoting *Miranda*, *supra*, 384 U.S. at pp. 444–445.) "Statements obtained in violation of *Miranda* are not admissible to prove the accused's guilt in a criminal prosecution." (*People v. Ray* (1996) 13 Cal.4th 313, 336 (*Ray*).)

*Miranda* is only implicated when there is a custodial interrogation. (*People v. Mickey* (1991) 54 Cal.3d 612, 648 ["Absent 'custodial interrogation,' *Miranda* simply does not come into play."].) "Before being subjected to 'custodial interrogation,' a suspect 'must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed.' " (*People v. Mayfield* (1997) 14 Cal.4th 668, 732, abrogated on other grounds in *People v. Scott* (2015) 61 Cal.4th 363.)

As discussed below, we conclude defendant was in custody for purposes of *Miranda*. However, we do not find he was subject to an interrogation such that the trial court should have suppressed defendant's incriminating statements. Therefore, the trial court did not err when it denied defendant's motion to suppress.

### 1.     Custody

"An interrogation is custodial when 'a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' " (*People v. Leonard* (2007) 40 Cal.4th 1370, 1400, quoting *Miranda*, *supra*, 384 U.S. at p. 444.) Custody means "a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest." (*People v. Moore* (2011) 51 Cal.4th 386, 394–395.) "When there has been no formal arrest, the question is how a reasonable person in the defendant's position would have understood his situation." (*Id.* at p. 395.)

Ultimately, " '[w]hether a defendant was in custody for *Miranda* purposes is a mixed question of law and fact. [Citation.] When reviewing a trial court's determination that a defendant did not undergo custodial interrogation, an appellate court must "apply a deferential substantial evidence standard" [citation] to the trial court's factual findings

8

regarding the circumstances surrounding the interrogation, and it must independently decide whether, given those circumstances, "a reasonable person in [the] defendant's position would have felt free to end the questioning and leave" [citation].' " (*People v. Moore*, *supra*, 51 Cal.4th at p. 395.)

The Court of Appeal has listed several factors to evaluate whether a defendant is in *Miranda* custody: "(1) whether the suspect has been formally arrested; (2) absent formal arrest, the length of detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of questioning." (*People v. Forster* (1994) 29 Cal.App.4th 1746, 1753.) "Additional factors are whether the officer informed the person he or she was considered a witness or a suspect, whether there were restrictions on the suspect's freedom of movement, whether the police were aggressive, confrontational, and/or accusatory, and whether the police used interrogation techniques to pressure the suspect." (*People v. Davidson* (2013) 221 Cal.App.4th 966, 972 (*Davidson*).)

A few Court of Appeal decisions assist our analysis. For example in *Davidson*, a law enforcement officer found the defendant pushing a stolen motorcycle. (*Davidson*, *supra*, 221 Cal.App.4th at p. 969.) The officer handcuffed the defendant and asked him, "Is this your vehicle?" and the defendant responded he found the motorcycle nearby. (*Ibid*.) The defendant moved to suppress his statement on the grounds it was obtained in violation of *Miranda*; the trial court determined he was not in custody and admitted his statements. (*Id*. at p. 970.)

The Second Appellate District agreed no custodial interrogation took place. (*Davidson*, *supra*, 221 Cal.App.4th at pp. 972–937.) It noted that the officer handcuffed defendant, but stated "[h]andcuffing a suspect during an investigative detention does not automatically make it custodial interrogation for purposes of *Miranda*." (*Id*. at p. 972.) Additionally, the detention lasted only two minutes, the officer was alone, and the

9

questioning took place on a public sidewalk. (*Ibid.*) Accordingly, "the trial court reasonably concluded that it was not a custodial interrogation for *Miranda* purposes." (*Id.* at p. 973.)

In *People v. Bellomo* (1992) 10 Cal.App.4th 195, an officer arrived to an accident scene and asked the defendant whether he was the driver of the vehicle and whether he had identification. (*Id.* at p. 198.) The defendant denied he was the driver. (*Ibid.*) On appeal, the defendant claimed he should have received a *Miranda* warning. (*Ibid.*) The Sixth Appellate District rejected the defendant's claim because the officer did not ask "accusatory" questions. (*Id.* at p. 199.) Instead, the court noted police may ask a detainee a moderate number of questions to determine identity and investigatory questions to determine the cause of the accident. (*Ibid.*, citing *Berkemer v. McCarty* (1984) 468 U.S. 420, 439.) Therefore, the court determined no error arose from the admission of the defendant's statement. (*Bellomo*, at p. 200.)

The People also direct us to *In re Joseph R.* (1998) 65 Cal.App.4th 954. There, a police officer handcuffed a minor he suspected of throwing rocks at a school bus and placed him in a patrol car. (*Id.* at p. 957.) The officer left the minor in the car for about five minutes, and then unhandcuffed him and commented it was "a pretty stupid thing" to throw rocks at a bus, to which the minor responded "Yeah, it was a pretty dumb thing for us to do." (*Ibid.*) On appeal, the minor claimed the officer elicited his statements without providing an appropriate *Miranda* warning. (*Ibid.*) The court disagreed, stating:

> "Here, when [the officer] began questioning [the minor], [the minor] had been released from the temporary restraints he experienced while the officer tended to another aspect of his investigation. By the minor's own admission, he was never told he was going to be arrested, but he *was* told he need not answer the officer's questions. The entire encounter lasted only about 15 or 20 minutes. After the interrogation was completed, the officers left the scene alone. [The minor] was, in fact, not arrested for another six weeks. Under these circumstances, we conclude the trial court was correct

10

in determining the warnings and waivers required by *Miranda* did not apply." (*In re Joseph R.*, *supra*, 65 Cal.App.4th at p. 962.)

By contrast, in *People v. Bejasa* (2012) 205 Cal.App.4th 26 (*Bejasa*), the court concluded a custodial interrogation occurred where an officer responded to a crash, handcuffed the defendant, and told him he was detained. (*Bejasa*, at pp. 32–33.) The officer unhandcuffed the defendant when four additional officers arrived; another officer then asked the defendant a series of questions designed to determine if the defendant was under the influence, and the defendant gave certain incriminating responses. (*Id*. at p. 33.) The court determined the defendant was in custody, in part, because the officer informed the defendant he was being detained. (*Id*. at p. 37.) Moreover, the court noted the "[d]efendant was confronted with two of the most unmistakable indicia of arrest: he was handcuffed and placed in the back of a police car." (*Ibid*.) Additionally, the Fourth Appellate District observed:

> "[A]lthough [the] defendant was released from the police car and the handcuffs removed by the time [the officer] questioned him, [the] defendant remained in custody for purposes of *Miranda*. The removal of the restraints was not enough to ameliorate the custodial pressures that likely remained from the initial confinement. Furthermore, [the] defendant was released from the police car only after numerous officers had arrived at the scene. The ratio of officers to suspect had increased to at least seven to one, thus increasing the custodial pressure on [the] defendant." (*Bejasa*, *supra*, 205 Cal.App.4th. at pp. 38–39.)

Here, certain factors support the conclusion that defendant was not in custody. For example, the People note McCrea removed defendant's handcuffs and he was never placed under arrest. Defendant freely exited the ambulance after McCrea reentered it. Furthermore, defendant's interaction with the police occurred in broad daylight.

Notwithstanding the above, other facts provide greater support for the conclusion that defendant was in custody. Importantly, McCrea handcuffed defendant one to two minutes after contacting him at the crash scene. Indeed, McCrea grabbed defendant's arm and turned him toward his patrol vehicle and informed defendant he was

11

going to detain him. McCrea testified defendant was not free to leave even after he removed the handcuffs. At least three other officers arrived to the scene—one of whom stood by the ambulance in case defendant attempted to flee.

The bottom line is that defendant was handcuffed, detained, not free to leave the crash scene, and in the proximity of at least four law enforcement officers. Under these circumstances a reasonable person "would feel restrained to a ' "degree associated with formal arrest." ' " (*Bejasa*, *supra*, 205 Cal.App.4th at p. 37, quoting *Berkemer v. McCarty*, *supra*, 468 U.S. at p. 440.) Therefore, we conclude defendant was in custody for purposes of *Miranda*.

### 2. Interrogation

Defendant next challenges the trial court's conclusion he was not subject to police interrogation. We agree with the trial court.

In the context of *Miranda*, the term "interrogation" encompasses both express questioning and " 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " (*People v. Elizalde* (2015) 61 Cal.4th 523, 531, quoting *Rhode Island v. Innis* (1980) 446 U.S. 291, 301, fn. omitted.) "Interrogation thus refers to questioning initiated by the police or its functional equivalent, not voluntary conversation." (*People v. Thornton* (2007) 41 Cal.4th 391, 432.)

"[N]ot all questioning of a person in custody constitutes interrogation under *Miranda*." (*Ray*, *supra*, 13 Cal.4th at p. 338.) For example, " 'neutral inquir[ies]' made for the 'purpose of clarifying [statements] or points that [the questioner] did not understand' " does not qualify as an interrogation. (*Ibid*.) "Consequently, the police 'may speak to a suspect in custody as long as the speech would not reasonably be construed as calling for an incriminating response.' " (*People v. Gamache* (2010) 48

12

Cal.4th 347, 388.) Moreover, "[g]eneral on-the-scene questioning may take place of persons temporarily detained by officers who do not have probable cause to arrest." (*People v. Milham* (1984) 159 Cal.App.3d 487, 500 (*Milham*).)

Again, two Court of Appeal decisions assist our analysis. In *Milham*, an officer responded to an accident, contacted the defendant (who was in an ambulance), and asked if the defendant was involved. (*Milham*, *supra*, 159 Cal.App.3d at p. 494.) When the defendant confirmed his involvement, the officer asked how the accident happened and the defendant claimed he blacked out. (*Id*. at p. 499.) On appeal, the defendant claimed his statements should have been suppressed because he did not receive a *Miranda* warning. (*Ibid*.)

The court determined the defendant was not entitled to a *Miranda* warning, in part, because the officer had no indication of criminality related to the accident and so there could be "no reasonable inference of surreptitious intent" from the officer. (*Milham*, *supra*, 159 Cal.App.3d at p. 500.) Instead, the officer had "an obligation to get all of the information possible surrounding the causes of the accident." (*Ibid*.) Accordingly, the court deemed the officer's questioning "investigatory" and not an interrogation within the meaning of *Miranda*. (*Id*. at p. 501.)

On the other hand, in *Bejasa*, the court concluded the defendant was subject to a *Miranda* interrogation where the officers knew the defendant possessed drug paraphernalia and suspected him of criminality. (*Bejasa*, *supra*, 205 Cal.App.4th at p. 40.) The court also noted the questions posed to the defendant such as " '[w]hat have you been drinking?' " and " '[h]ow much?' " were likely to elicit an incriminating response. (*Ibid*.)

The facts do not indicate defendant was subject to *Miranda* interrogation because of the nature of the questioning. When McCrea first contacted defendant, he asked him for his name and how the crash occurred. McCrea also asked defendant if he knew where

13

he was and whether he was on parole or probation.  In our view, these questions are not "accusatory" and instead fall within the scope of "general on the scene" questioning law enforcement may conduct without providing a *Miranda* warning.  (*Milham*, *supra*, 159 Cal.App.3d at p. 696; see also *Davidson*, *supra*, 221 Cal.App.4th at p. 973  ["If the questioning is aggressive, confrontational, accusatory, coercive, or sustained, the court may find a violation of *Miranda*."].)  Thus, McCrea was not obligated to provide a *Miranda* warning to defendant when he first detained and questioned him.

Next, the record indicates McCrea returned to the ambulance and asked defendant if everything was okay and defendant responded, " 'I'm not going back for this.' "  This exchange does not run afoul of *Miranda* because McCrea simply made a "neutral inquir[y]" and defendant responded by volunteering a potentially incriminating comment.  (*Ray*, *supra*, 13 Cal.4th at p. 338; see also *People v. Mickey*, *supra*, 54 Cal.3d at p. 648 ["*Miranda* does not 'prohibit the police from merely listening to … voluntary, volunteered statements' .…"].)  McCrea then stated it was not illegal to get into a motor vehicle accident and defendant replied, "it is illegal to take somebody's stuff."  Again, McCrea simply made a clarifying comment to which defendant responded with another potentially incriminating statement.  (*Ray*, *supra*, 13 Cal.4th at p. 338.)  Thus, this exchange is not a *Miranda* interrogation either.

We also note defendant made another potentially incriminating comment that he was going "way too fast" when McCrea questioned him about the collision after he exited the ambulance and walked toward the accident scene.  But again, we see no issue here because defendant volunteered this statement in response to a general investigatory question.[4]

---

[4]    Defendant also does not appear to make this potentially incriminating response the focus of his appeal and defense counsel did not mention this statement in the trial court.

14

McCrea also asked "pre-field sobriety test questions." However, the record does not indicate the substance of those questions, nor does it indicate defendant made any incriminating responses to them. Moreover, McCrea testified he asked these questions as part of his investigation. Therefore, we cannot conclude on this record that McCrea veered into "accusatory" questioning. (*Bejasa*, *supra*, 205 Cal.App.4th at p. 40.)[5]

In sum, the trial court did not err when it denied defendant's motion to suppress. McCrea's interaction with defendant at the accident scene never rose to the level of an interrogation. To the extent defendant made incriminating comments, they were in response to permissible neutral inquiries. Therefore, it did not trigger the need for a *Miranda* warning.[6]

## II. Defendant is Entitled to Resentencing

In supplemental briefing, defendant asks for resentencing in light of Assembly Bill 518. The People agree defendant is entitled to this relief.

Assembly Bill 518 amended section 654, subdivision (a), to provide: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (Stats. 2021, ch. 441, § 1.) Previously under section 654, "the sentencing court was required to impose the sentence that 'provides for the longest potential term of imprisonment' and stay execution of the other

---

[5] Defendant analogizes McCrea's conduct to the United States Supreme Court case of *Brewer v. Williams* (1977) 430 U.S. 387, where law enforcement gave the murder suspect a " 'Christian burial speech' " as they traveled on a road in Iowa. (*Brewer*, at p. 392.) In that speech, the law enforcement officer stated his belief the defendant was the only one who knew the whereabouts of the child victim's body. (*Ibid*.) This case is not remotely similar to *Brewer* and McCrea never accused defendant of wrongdoing or made any comment to that effect.

[6] Because we conclude the trial court properly denied defendant's motion to suppress, we need not address defendant's argument as to whether the admission of his statements to McCrea caused prejudicial error.

term.  [Citation.] … [S]ection 654 now provides the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence."  (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.)

Under the rule of *In re Estrada* (1965) 63 Cal.2d 740, "[w]hen the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date."  (*People v. Brown* (2012) 54 Cal.4th 314, 323.)

Here, the trial court imposed an aggregate eight-year sentence on count 5 (felony receipt of a stolen vehicle) arising from the May 7, 2018 incident.  The court imposed a concurrent six-year sentence on count 4 (felony taking a vehicle without the owner's consent) arising from the same incident and stayed it pursuant to section 654.

Defendant's judgment is not yet final.  (See *People v. Jennings* (2019) 42 Cal.App.5th 664, 682 ["For purposes of the *Estrada* rule, a judgment is not final so long as courts may provide a remedy on direct review."].)  Moreover, nothing in Assembly Bill 518 suggests legislative intent that the amendments apply prospectively only.  Therefore, we conclude defendant is entitled to the benefit of Assembly Bill 518 and remand is appropriate.

## DISPOSITION

The case is remanded and the trial court is directed to resentence defendant pursuant to Assembly Bill 518.  In all other respects, the judgment is affirmed.