Filed 11/5/25  P. v. Castaneda CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085874 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. INF2100855) |
| EMELY BAILON CASTANEDA, | ORDER MODIFYING OPINION |
| Defendant and Appellant. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on October 15, 2025, be modified as follows:

On page 13, footnote 11 should be replaced in its entirety with the following:

> Although the trial court did not have the benefit of *Walker* when it sentenced Castaneda, section 1385's great weight requirement was in effect at the time of sentencing.

There is no change in the judgment.

O'ROURKE, Acting P. J.

Copies to:  All Parties

Filed 10/15/25  P. v. Castaneda CA4/1 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EMELY BAILON CASTANEDA,<br><br>    Defendant and Appellant. | D085874<br><br><br>(Super. Ct. No. INF2100855) |

APPEAL from a judgment of the Superior Court of Riverside County, Otis Sterling, III, Judge.  Sentence vacated and remanded for resentencing.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Joshua Trinh, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

Castaneda killed a man and seriously injured the man's wife by driving the wrong way on a highway while under the influence of alcohol and drugs.

She had a prior conviction for driving under the influence (DUI). A jury convicted Castaneda of second degree murder, driving under the combined influence of alcohol and drugs causing bodily injury, and driving with a suspended license. On appeal, Castaneda claims the trial court erred prejudicially by admitting statements she made in response to police questioning conducted in violation of *Miranda v. Arizona* (1966) 384 U.S. 436. She also claims the trial court erred by not instructing the jury on vehicular manslaughter and by not dismissing the great bodily injury enhancement attached to the DUI count. We find no error under *Miranda* or the trial court's homicide instructions. However, the trial court applied the wrong legal standard in declining to dismiss the great bodily injury enhancement. We therefore vacate the sentence and remand for resentencing.

## II. BACKGROUND

Two years before the events in this case, Castaneda pleaded guilty to driving under the influence of alcohol (Veh. Code, § 23152, subd. (b)). A court sentenced Castandea to three years' probation and her license was suspended. As a result of that conviction, Castaneda signed an advisement that stated, "You are hereby advised that being under the influence of alcohol or drugs, or both, impairs your ability to safely operate a motor vehicle. Therefore, it is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both. If you continue to drive while under the influence of alcohol or drugs, or both, and, as a result of that driving, someone is killed, you can be charged with murder."[1]

---

[1] This advisement is commonly referred to as a "*Watson* advisal" after *People v. Watson* (1981) 30 Cal.3d 290. Vehicle Code section 23593 requires the advisal be given to any person convicted of DUI.

On the evening of May 31, 2021, Castaneda consumed approximately eight alcoholic beverages, marijuana, and Xanax. Around 10:00 p.m., Castaneda drove the wrong way on California State Route 62, colliding with a vehicle driven by Clinton Palmquist. Palmquist died at the scene, and his wife Tiffany Campbell, who was a passenger, suffered numerous injuries including a traumatic brain injury, a concussion, fractured vertebrae in her spine, a fractured sternum, a torn rotator cuff, and soft tissue damage in her back and knee.

California Highway Patrol Officer David Torres arrived at the scene with his partner, Officer Nolan Wilson. Officer Torres found Castaneda trapped in the driver's seat of her car, while Officer Wilson responded to the victims' vehicle.

Officer Torres told Castaneda, "[a]lright, don't move. Okay? We're gonna have to get fire to pull you out." Castaneda responded, "I know, yeah. I don't like even to. It's really tight, yup." Officer Torres then said, "I know. Cuz they' re gonna get you out. Okay? The fire's gonna cut you out. So, you move, there's a chance that you can pull something in your back or your neck, or whatever. Okay?" Castaneda agreed, stating, "I don't need to pull nothing. I'll stay right here."

Officer Torres proceeded to ask Castaneda general background information such as how fast she was driving, what lane she was in, and where she was going. He also confirmed Castaneda earlier consumed Xanax and alcohol. After performing a visual field sobriety test, Officer Torres asked Castaneda if she had ever been arrested for DUI, and she answered yes. Officer Torres then conducted a breath test and asked, "[w]hen you got arrested before for DUI, and you had to go to court, did they tell you that if

3

you were to kill somebody, you could be arrested for murder?" Castaneda acknowledged she had been so advised.

Officer Torres then asked Castaneda additional questions about where she had been and with whom. Officer Torres also had Castaneda perform a second breath test. The breath tests revealed a blood-alcohol concentration of 0.216 and 0.228 percent. Officer Torres's interaction with Castaneda lasted nine minutes, until the fire department arrived to remove Castaneda from her vehicle and transport her to the hospital. Officer Torres continued his investigation at the scene and then arrested Castaneda at the hospital a few hours later.

The Riverside District Attorney's Office charged Castaneda with murder (Pen. Code,[2] § 187, subd. (a); count 1); driving under the combined influence of alcohol and drugs causing bodily injury (Veh. Code, § 23153, subd. (g); count 2); and driving with a license suspended for DUI (*id.*, § 14601.2, subd. (a); count 4).[3] The prosecutors alleged in count 2 that Castaneda personally inflicted great bodily injury upon Campbell (§ 12022.7, subd. (a)) and had a blood-alcohol concentration of 0.20 percent or more (Veh. Code, § 23538, subd. (b)(2)).

---

[2]    All further statutory references are to the Penal Code.

[3]    The People also charged Castaneda with willfully driving on the wrong side of the road causing injury (Veh. Code, § 21651, subd. (c)), which was identified as count 3, but that was dismissed pursuant to the People's motion prior to trial. Thereafter, the parties referred to the driving with a suspended license charge as "count 3," but the verdict form and sentencing minutes refer to it as "count 4." We will refer to the driving with a suspended license count as "count 4."

Prior to her trial, Castaneda moved to exclude statements she made to Officer Torres while she sat trapped inside her car.[4] She argued the statements were inadmissible because Officer Torres did not give her a *Miranda* warning[5] prior to the interaction. The trial court denied the motion, subsequently admitting Officer Torres's dashboard camera footage[6] and testimony regarding Castaneda's on-scene statements.

The trial court instructed the jury on second degree murder for count 1. Neither party requested, nor did the trial court provide, instructions on any other forms of homicide. The jury found Castaneda guilty of all counts, finding true the personal infliction of great bodily injury and blood-alcohol concentration allegations attached to count 2.

The trial court denied Castaneda's request to dismiss the great bodily injury enhancement based on her prior victimization and childhood trauma. Without addressing the great weight given to those mitigating circumstances under section 1385, subdivision (c)(2), the trial court found that dismissal would not be in the interest of justice. The trial court sentenced Castaneda to state prison for 19 years and 4 months to life. Castaneda received 15 years to life for count 1, a consecutive year and four months for count 2, a

---

[4] Castaneda's trial began January 8, 2024.

[5] "This familiar admonition warns the suspect of the right to remain silent, that any statement may be used as evidence against him or her, and that the suspect has a right to the presence of a retained or appointed attorney." (*People v. Caro* (2019) 7 Cal.5th 463, 491 (*Caro*).) "Statements taken in violation of *Miranda* are inadmissible in the government's case-in-chief." (Caro, at p. 492.)

[6] Based on the angle of the dashboard camera, the footage only captures the audio portion of the interaction between Castaneda and Officer Torres.

consecutive three years for the great bodily injury enhancement, and a concurrent 180 days for count 4. Castaneda timely appealed.

# III. DISCUSSION

*A.*     *The Trial Court Did Not Err in Admitting Castaneda's Statements to Officer Torres Because Castaneda Was Not in Custody*

Castaneda argues the trial court erred in admitting her statements to Officer Torres made while she sat trapped in her car. She claims the interaction was a custodial interrogation requiring a *Miranda* warning. According to Castaneda, a reasonable person would not feel free to leave under the circumstances based on the nature of Officer Torres's questions and because he ordered Castaneda not to move. We disagree.

> Before they begin custodial interrogation[7] of a suspect, the police have an obligation to deliver *Miranda* warnings. . . . [Citation.] The warning is meant to protect the suspect's privilege against self-incrimination, which is jeopardized by the inherently coercive nature of police custodial questioning. [Citation.]
>
> The purpose of *Miranda* guides the meaning of the word "custody," which refers to circumstances "that are thought generally to present a serious danger of coercion." [Citation.] Such a danger of coercion is usually present where there has been a " ' "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' " [Citations.] The key question is whether, under all of the objective circumstances, a reasonable

---

7     Custodial interrogation has two components: (1) custody and (2) interrogation. (*People v. Mosley* (1999) 73 Cal.App.4th 1081, 1088–1089.) Because the parties focus on custody and our determination of that issue resolves the matter before us, we do not address interrogation.

6

person in the suspect's position would have felt free to terminate the interrogation. [Citations.] But even if a person's freedom of movement has been curtailed, an "additional question" arises: "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." (*Caro, supra*, 7 Cal.5th at p. 491.)

We evaluate custody "by looking to the totality of the circumstances." (*Caro, supra*, 7 Cal.5th at p. 492.) Relevant factors include: " '(1) whether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning.' [Citation.] Additional factors are [(6)] whether the officer informed the person he or she was considered a witness or suspect, [(7)] whether there were restrictions on the suspect's freedom of movement, [(8)] whether the police were aggressive, confrontational, and/or accusatory, and [(9)] whether the police used interrogation techniques to pressure the suspect." (*People v. Davidson* (2013) 221 Cal.App.4th 966, 972.)[8]

"Where, as here, an interview is recorded, the facts surrounding the admission are undisputed and subject to our independent review." (*People v. Torres* (2018) 25 Cal.App.5th 162, 173.)

Here, Castaneda restricted her own freedom of movement by causing the car collision. Officer Torres did nothing to further restrain her. Although Officer Torres told Castaneda not to move, he was not detaining her but instead advising her based on safety and health concerns. Castaneda

---

[8] We note that a "defendant's 'compromised physical and psychological condition' . . . is relevant to the inquiry and presents an opportunity for abuse." (*Caro, supra*, 7 Cal.5th at p. 493, citation omitted.) However, Castaneda does not rely on that factor, nor do we believe it changes the outcome based on the circumstances discussed below.

acknowledged the danger and agreed to remain still.  These circumstances weigh against a finding of custody.  (See, e.g., *People v. Milham* (1984) 159 Cal.App.3d 487, 501 [defendant not in custody when questioned in ambulance because "[h]e may well have been unable physically to leave the scene, but not by virtue of police conduct"]; *Wilson v. Coon* (8th Cir. 1987) 808 F.2d 688, 690 ["Detention for a medical examination is not a situation that a reasonable person would find inherently coercive in the sense required by *Miranda*"]; *People v. Mosley*, *supra*, 73 Cal.App.4th 1081, 1090–1091 [no custody where "[a]ny restraint of defendant's freedom of action was caused by the need to treat his gunshot wound"].)

The length and location of the questioning, as well as the ratio of officers to suspects, also indicate the interaction was noncustodial.  Officer Torres was the only officer involved, and the interaction lasted nine minutes.  Additionally, "a public highway is a neutral setting that police officers are not in a position to dominate as they are, for example, an interrogation room at a jailhouse."  (*U.S. v. Jones* (1st Cir. 1999) 187 F.3d 210, 218.)

Officer Torres's questioning resulted in incriminating responses from Castaneda.  However, the nature of Officer Torres's inquiry was not aggressive and maintained a conversational tone.  Additionally, during a preliminary DUI investigation, police may ask general on-the-scene questions prior to giving a *Miranda* warning.  (*Berkemer v. McCarty* (1984) 468 U.S. 420, 442 [asking defendant "a modest number of questions" and conducting field sobriety test "cannot fairly be characterized as the functional equivalent of formal arrest"].)  Finally, Officer Torres did not use his weapon or handcuffs, nor did he state that Castaneda was under arrest or being detained.  Castaneda was transported to the hospital after the interaction, and she was not arrested until hours later.

Under the totality of these circumstances, Officer Torres did not restrict Castaneda's freedom of movement, nor did he subject her to the " 'inherently coercive pressures' " of police station questioning. (*Caro*, *supra*, 7 Cal.5th at p. 491.) Castaneda was therefore not in custody for *Miranda* purposes, and the trial court did not err in admitting her statements to Officer Torres.

B. *The Trial Court Had No Duty to Instruct on Vehicular Manslaughter*

Castaneda argues the trial court was required to instruct the jury on vehicular manslaughter because that form of homicide is a lesser included offense of murder. Castaneda acknowledges that she was not entitled to a vehicular manslaughter instruction pursuant to the California Supreme Court's decision in *People v. Sanchez* (2001) 24 Cal.4th 983 (*Sanchez*). However, she argues *Sanchez* requires reconsideration because it overlooked equal protection considerations and because it requires juries to make all-or-nothing decisions.

"Generally, when a defendant is charged with a crime, the trial court must instruct the jury on any lesser included offenses that are supported by the evidence. [Citation.] . . . '[A] lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser.' [Citation.] However, without the consent of the prosecutor, a court has no obligation to instruct on lesser related offenses, which are not necessarily included in a charged crime." (*People v. Wolfe* (2018) 20 Cal.App.5th 673, 684, italics omitted.)

*Sanchez* held that "gross vehicular manslaughter while intoxicated [(§ 191.5, subd. (a))] should not be treated as a lesser included offense of

9

murder" because it "requires proof of *additional elements* that are not included in the offense of murder or in other forms of nonvehicular manslaughter." (*Sanchez, supra*, 24 Cal.4th at p. 992.) Those additional elements are "use of a vehicle and intoxication." (*Id*. at p. 989.) Case law has recognized, and Castaneda does not dispute, that the reasoning of *Sanchez* applies to other forms of vehicular manslaughter (§ 192, subd. (c)), as they require proof of an element not required for murder; namely, the driving of a vehicle. (*People v. Bettasso* (2020) 49 Cal.App.5th 1050, 1058–1059.)

Castaneda's argument that *Sanchez* improperly requires juries to make all-or-thing decisions was necessarily rejected by the majority in *Sanchez* because Justice Kennard raised that issue in her dissenting opinion. (*Sanchez, supra*, 24 Cal.4th at p. 1001 (dis. opn. of Kennard, J.).) We are required to follow *Sanchez's* precedent. (*People v. Barooshian* (2024) 101 Cal.App.5th 461, 471.)

As for Castaneda's equal protection claim, we agree with the cases holding that "the failure to instruct on a vehicular manslaughter charge as a lesser included offense of a murder charge does not offend equal protection principles." (*People v. Lagunas* (2023) 97 Cal.App.5th 996, 1011; see also *People v. Wolfe, supra,* 20 Cal.App.5th at p. 690; *People v. Bettasso, supra,* 49 Cal.App.5th at p. 1059, fn. 8.)

Accordingly, we see no reason to depart from *Sanchez*. Because vehicular manslaughter is not a lesser included offense of murder, the trial court was not required to instruct on it.

C.     *The Trial Court Abused its Discretion in Declining to Dismiss the Great Bodily Injury Enhancement*

10

Castaneda argues the trial court erred in imposing the great bodily injury enhancement on count 2 because it did not afford great weight to the mitigating circumstance of her prior victimization. We agree.

1. Additional Background

Castaneda filed a statement in mitigation requesting that the trial court dismiss the great bodily injury enhancement. Consistent with her trial testimony, Castaneda asserted that prior to the collision, she and her friend Marissa were in their hotel room with several men. The men made drinks for Castaneda and Marissa but did not allow the women to make their own drinks. Castaneda became suspicious because she had been sexually assaulted in the past, so she confronted the men. This led to an argument between Castaneda and Marissa. Feeling unsafe and betrayed by her friend, Castaneda went to her car, fell asleep, and then decided to drive home when she awoke an hour later. Based on these circumstances, Castaneda argued her offense was connected to prior victimization, and she requested dismissal of the great bodily injury enhancement pursuant to section 1385.[9]

At the sentencing hearing, defense counsel also argued dismissal was warranted based on Castaneda's prior traumatization detailed in the probation officer's sentencing recommendation. That recommendation stated that when Castaneda was 13, her father was deported after being arrested for beating Castaneda's mother; Castaneda's mother was an abusive heavy-drug user who disappeared for days at a time; Castaneda started drinking alcohol and smoking marijuana at age 14; and she dropped out of school in ninth grade to work and provide for her brothers.

---

[9] Castaneda also sought to dismiss the enhancement because it could result in a sentence over 20 years (§ 1385, subd. (c)(2)(C)), but she does not assert on appeal that the trial court made any error regarding that mitigating circumstance.

11

The trial court found that Castaneda "had a very difficult start in life" which impacted her decisions, and that she was remorseful. On the other hand, the court noted that Castaneda's crime had a devastating impact on Campbell, and that Castaneda had a prior DUI conviction and violated the terms of her probation. The trial court then declined to dismiss the enhancement, stating, "[a]ll of those things taken into consideration, the defense's position ha[s] merit, but the interests of justice do not weigh in favor of the court dismissing the great bodily injury." When asked if it was finding that dismissal would endanger public safety, the court responded, "I don't know that I'm making that finding. I think I'm making the finding that in consideration of all the information before me, that the interest of justice does not support dismissal of that enhancement."

### 2. Dismissal of Enhancements Under Section 1385

The trial court "shall dismiss an enhancement if it is in the furtherance of justice to do so." (§ 1385, subd. (c)(1).)[10] "In exercising its discretion" in this regard, the court "shall consider and afford great weight to evidence offered by the defendant to prove" certain enumerated mitigating circumstances, and "[p]roof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) One of the listed mitigating circumstances is "[t]he current offense is connected to prior victimization or childhood trauma." (§ 1385, subd. (c)(2)(E).)

---

10      There is an exception when "dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1).) The exception is inapplicable in this case.

12

The California Supreme Court recently clarified the balancing that must take place under section 1385, subdivision (c)(2). "[A]bsent a finding that dismissal would endanger public safety, a court must assign significant value to the enumerated mitigating circumstances when they are present. In practice, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1038.)[11]

We review a trial court's decisions under section 1385 for abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) "As relevant here, 'an abuse of discretion arises if the trial court based its decision on . . . an incorrect legal standard.' " (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225.)

3.    The Trial Court Applied the Wrong Legal Standard

By finding that Castaneda's difficult start in life impacted her decisions and that her dismissal request had merit, the trial court necessarily determined that Castaneda's prior victimization and/or childhood trauma was connected to the current offense. The trial court was required to give great weight to those mitigating circumstances because it did not find that dismissing the enhancement would endanger public safety.

Section 1385's great weight requirement for the specified mitigating circumstances was not mentioned in any briefing, during the parties'

---

11    Although the trial court did not have the benefit of *Walker* when it sentenced Castaneda, section 1358's great weight requirement was in effect at the time of sentencing.

13

sentencing arguments, or in the probation officer's sentencing recommendation. Additionally, the trial court did not expressly or impliedly assign the prior victimization or childhood trauma any additional significance. Nor did the trial court explain why it did not. The court merely assessed the totality of the circumstances as if section 1385 did not alter the balancing process.

Under these circumstances, the record affirmatively shows that the trial court applied the wrong legal standard.[12] The trial court therefore abused its discretion in declining to dismiss the enhancement.

### 4. The Error Prejudiced Castaneda

"[W]hen, as here, a sentencing court was not fully aware of the scope of its discretionary powers, 'the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*People v. Salazar* (2023) 15 Cal.5th 416, 425.)

The record does not clearly indicate the trial court would have reached the same conclusion had it afforded great weight to Castaneda's prior victimization or trauma. Because the trial court found that Castaneda's request to dismiss the enhancement had merit, the proper application of section 1385, subdivision (c)(2), could have changed the outcome. The trial court's error was therefore prejudicial and requires a remand for resentencing. We express no view on how the trial court should exercise its discretion on remand.

### D. *The Abstract of Judgment Contains an Error*

---

[12] Although " '[t]he general rule is that a trial court is presumed to have been aware of and followed the applicable law,' " that "presumption will be overcome however by an affirmative showing of error in the record." (*People v. Nakano* (2023) 89 Cal.App.5th 623, 635.)

As parties acknowledge, the abstract of judgment incorrectly states that Castaneda was convicted of first degree murder in count 1. When issuing a new abstract of judgment after resentencing, the trial court shall correctly identify the crime in count 1 as second degree murder.

## IV. DISPOSITION

The sentence is vacated, and this matter is remanded for the trial court to conduct a resentencing proceeding consistent with this opinion.

RUBIN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DATO, J.